797 F.2d 752
 Gary L. MORRISON, Jose C. Ramirez, Gregory F. Mullally, and
Colleen C. Brink, individually and as shareholders of
Amusement Systems of Hawaii, Inc., a Hawaii corporation, and
Nevada Amusement Systems, Inc., a Nevada corporation,
Plaintiffs-Appellants,
v.
Vernon F.L. CHAR; Damon, Shigekane, Key & Char, a Hawaii
corporation, et al., Defendants-Appellees.
 No. 85-1762.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 11, 1986.
Decided Aug. 15, 1986.
 
 E. Elizabeth Summers, Oakland, Cal., for plaintiffs-appellants.
 Rodney S. Nishida, Honolulu, Hawaii, for defendants-appellees.
 Appeal from the United States District Court for the District of Hawaii.
 Before SNEED, HALL and KOZINSKI, Circuit Judges.
 SNEED, Circuit Judge:
 
 
 1
 This diversity action involves a claim of legal malpractice against an attorney, Vernon Char, and his law firm. The district court granted summary judgment for Char. Because genuine issues of material fact exist, we reverse and remand.
 
 I.
 FACTS AND PROCEEDINGS BELOW
 
 2
 In mid-1977, appellants Gary Morrison, Jose Ramirez, Gregory Mullally, and Colleen Brink (the Nevada group) were the shareholders and officers of a Nevada corporation, Nevada Amusement Systems, Inc. (NAS). Morrison and Mullally handled the business aspects of NAS, while Ramirez was responsible for the technical work. The Nevada group, deciding to expand its business to Hawaii, met with Robert Dawson, Ronald Sowell, and Lawrence Goldberg, the Hawaii group. Appellee Vernon Char, a partner in the law firm of Damon, Key, Char & Bocken,[1] previously had represented ventures for both Dawson and Sowell and had assisted the Hawaii group in incorporating Roller World, their new roller rink.
 
 
 3
 The Nevada and Hawaii groups conducted their initial meeting in Las Vegas and arrived at an agreement under which NAS would provide amusement machines and the Hawaii group would provide a warehouse and office facility. Thereafter, Morrison and a friend of his, C. Dan Bowman, a recent law school graduate and member of the Nevada bar, met with Char and Dawson in Hawaii. Morrison and Dawson informed Char of their agreement to form a Hawaii corporation, to be called Amusement Systems of Hawaii, Inc. (ASH). Appellants allege that Bowman asked Char whether Char was going to represent the Nevada group in this venture or whether local counsel should be obtained. Char, it is alleged, answered that he would represent the Nevada group. Appellants' Brief at 5. According to the appellants, "[B]oth Morrison and Bowman knew that Char was then representing Roller World and the Hawaii group...." Id. at 5.
 
 
 4
 In the process of incorporating ASH, Char suggested that the initial agreement between the two groups be altered in several ways. Compare C.R. subdivision 15, exhibit A, with id. exhibits H, K. First, under the articles of incorporation, he suggested that ASH should be minimally capitalized and should lease, rather than buy, its games from NAS. Second, although the original agreement called for both the Hawaii and Nevada groups each to own 50% of ASH's stock, the Hawaii group was the only group appearing on the incorporation paperwork. Later 50% of ASH's stock was transferred to the Nevada group. The articles of incorporation for ASH were signed on October 17, 1977.
 
 
 5
 The next step in getting the venture under way was to draw up a contract between ASH and Roller World under which ASH would provide and service coin-operated electronic games for Roller World's new rink in return for a split of the take. Morrison prepared an eighteen-page draft of the contract by using a copy of a contract between NAS and a bowling alley operator, substituting the names of ASH and Roller World for the previous parties. This draft was forwarded to the Hawaii group for review. Morrison and Bowman again travelled to Hawaii, and Bowman made changes in Morrison's draft during the trip. The two met with the Hawaii group in Char's office for between three and four hours, at the conclusion of which they agreed to have Char redraft the contract "to reflect the discussions that had just taken place," Appellants' Brief at 7. Char notes that his alleged agreement to "represent 'everybody's interests' ... was made at the end of the meeting after both sides had hammered out the terms of the contract." Answering Brief of Defendants-Appellees at 5.
 
 
 6
 Char allegedly made further alterations in the contract, which he then sent to ASH and Roller World at their joint corporate office in Honolulu and to Morrison in Nevada. Bowman, the recent law graduate, did not receive a copy of the draft, which by this time had shrunk to six pages. See C.R. subdivision 1, exhibit A. Morrison called Char with respect to questions he had concerning Char's draft; thereafter, Morrison redrafted the contract to reflect these discussions. This contract was executed on December 8, 1977.
 
 
 7
 Other contracts, reflecting other aspects of the venture, followed soon afterward. ASH agreed to lease from NAS the games that ASH would then supply to Roller World, in exchange for half of ASH's share of the profits from the ASH/Roller World deal. In March of 1978, ASH agreed to provide and service games at another of the Hawaii group's roller rinks, Skate World, Inc. This agreement appears to have been signed after Char wrote a letter on March 9, 1978, to both the Nevada and Hawaii groups. The Nevada group letter was addressed to Morrison, Goldberg, and Sowell; it responded to a question Bowman had raised about the ASH/Roller World contract. See C.R. subdivision 15, exhibit F. Char again did not send Bowman a copy of this letter. Id. The ASH/Skate World agreement was identical to the ASH/Roller World agreement, and ASH entered into an agreement with NAS identical to the previous supply contract for Roller World.
 
 
 8
 The formation of ASH and these agreements formed the structure of the venture. In mid-1978, however, the working relationship between the Nevada group and the Hawaii group began to sour. The problems pertained to how profits were to be determined. The Nevada group accused the Hawaii group of making unauthorized deductions in computing the Nevada group's share. These deductions arose from the cost of an attendant monitoring the games. The Nevada group contended that these deductions were affecting adversely their ability to supply the games to Roller World and Skate World. By the fall of 1978, the Nevada group hired local Hawaii counsel to attempt to resolve the situation. On December 21, 1978, Char, as attorney for Roller World and Skate World, terminated the ASH/Roller World and ASH Skate World contracts.
 
 
 9
 After an attempt to sue the members of the Hawaii group failed,[2] the Nevada group sued Char. The district court granted Char's motion for summary judgment, based on a finding that Char represented the Hawaii group and Bowman represented Morrison, and that there had been no conflict of interest. See Appellants' Excerpt of Record (Appellants' E.R.) subdivision 20. This appeal followed.
 
 II.
 DISCUSSION
 A. Standard of review
 
 10
 The district court's grant of summary judgment is reviewed, as all agree, de novo, "viewing the evidence in the light most favorable to the losing party, to determine if the prevailing party was clearly entitled to judgment as a matter of law." Bohemia, Inc. v. Home Insurance Co., 725 F.2d 506, 508 (9th Cir.1984). Even though the district court entered findings of fact,[3] these findings of fact are also subject to de novo review.[4] See Garter-Bare Co. v. Munsingwear, Inc., 650 F.2d 975, 980 (9th Cir.1980); United States v. Washington, 645 F.2d 749, 752 (9th Cir.1981).
 
 
 11
 B. The district court erred in granting summary judgment for Char
 
 
 12
 There is a genuine dispute about whether Char ever represented the Nevada group, when, if ever, he represented that group, and whether Char had a conflict of interest in any such representation; all of these facts are material.
 
 
 13
 The district court, in granting summary judgment for Char, found that the Nevada and Hawaii groups had already agreed on the terms of ASH's incorporation before the first meeting with Char, that Bowman participated extensively in drafting the ASH/Roller World contract, and that "during the hammering out of th[at] contract[,] Vernon Char acted for the Hawaii group and Dan Bowman advised Morrison and the Nevada group." Appellants' E.R. subdivision 20, findings 3-6, 11-13, 16, 19. In making its finding that "there is no dispute of a material fact regarding the issue of conflict of interest or full disclosure," the court found specifically that Char had not been involved in a conflict of interest and that there had been "full disclosure." Id. findings 21-24.
 
 
 14
 In making those specific findings to support its grant of summary judgment, the district court erred. Enough evidence had been introduced on both sides to establish that genuine issues of material facts exist. First is the question of whether Char actually said he was going to represent everyone's interests. Second, and more important, is the issue of when Char made this alleged statement. Compare C.R. subdivision 15, Morrison deposition at 78 (statement allegedly made at incorporation meeting), with R.T. at 25-26 (statement allegedly made at the "hammering out" of the ASH/Roller World contract). Third, the issue of what "representing everyone's interests" supposedly meant is still disputed. Compare C.R. subdivision 15, Morrison deposition at 17 (statement construed as referring to long-term representation), with C.R. subdivision 19 (statement meaningless because of Bowman's "actual" representation of the Nevada group). The fact that Char sent the ASH/Roller World contract to Morrison instead of to Bowman, Morrison's alleged attorney, see R.T. at 22-23, suggests that Bowman did not represent the Nevada group. Similarly, Char's March 1978 letter interpreting the ASH/Roller World contract lists Morrison, not Bowman, as an addressee. But see R.T. at 34-35 (district court disagrees with this interpretation of Char's actions). Finally, the issue remains as to whether Char fully disclosed to the Nevada group his representation of the Hawaii group.[5]
 
 
 15
 Hawaii Code of Professional Responsibility DR 5-105(B) (1984)[6] states that "[a] lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client." In a limited exception to this disciplinary rule, 5-105(C) adds that "a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each." Rule 5-105 calls for exquisite factual determinations in its application. Cf. Unified Sewerage Agency v. Jelco Inc., 646 F.2d 1339, 1350 (9th Cir.1981) (using a fact-based determination of "adequate representation" requirement of Oregon's DR 5-105(C), which is identical to Hawaii's 5-105(C)); Trone v. Smith, 621 F.2d 994, 998-1001 (9th Cir.1980) (setting forth factors that affect the "appearance of a breach of confidence" in violation of Canons 1, 4, 5, 6, 7, and 9). Summary judgment is patently inappropriate in this case. As we noted in Garter-Bare, 650 F.2d at 979, summary judgment "is not a device to be employed to dispose of litigation simply because it appears that the plaintiff may have a weak case." A "weak case," on paper, may become a compelling case at trial.
 
 
 16
 C. Whether Char represented the Nevada group at the time of ASH's incorporation is properly before this court
 
 
 17
 The foregoing is predicated upon the assumption that the issue whether Char ever represented the Nevada group was properly before the district court and this court as well. Clearly we believe that it was. Char, however, contends otherwise. He claims that the Nevada group "never raised th[is] question[ ] of fact either in [its] Memorandum in Opposition to Motion for Summary Judgment ... or at the hearing before [the district court]." Id. at 9.
 
 
 18
 Char's argument ignores pleadings and misquotes testimony. The Nevada group raised the issue of Char's role in the incorporation of ASH in its complaint at 16 and 17. See C.R. subdivision 1. Char denied pleadings 16 and 17 in his answer. See C.R. subdivision 5. As part of his Memorandum in Support of Motion for Summary Judgment Against Plaintiffs, Char referred to the contention that "Plaintiffs have alleged that Char represented them and that he had a conflict of interest in representing the Hawaii group in organizing ASH." C.R. subdivision 15. In one of the attached exhibits, Char included excerpts from Morrison's deposition in which Morrison stated that Char had told the Nevada group not to seek "outside local counsel ... in connection with forming the Hawaii corporation." C.R. subdivision 15, Morrison deposition at 78. The district court, in granting the motion for summary judgment, mentioned that Char had incorporated ASH (although it made no conclusion as to his representation of the Nevada group at that point). See Appellants' E.R. subdivision 20. Most telling is the fact that Char omitted the portion of page 21 of the Reporter's Transcript that referred to ASH's incorporation:
 
 
 19
 THE COURT: Now you are talking about this transaction?
 
 
 20
 MR. BRIDGMAN: [attorney for the Nevada group]: I'm sorry, Your Honor.
 
 
 21
 THE COURT: You were talking about this agreement?
 
 
 22
 MR. BRIDGMAN: Both the drafting of the contract and the organization of the corporation ....
 
 
 23
 R.T. at 20-21.
 
 
 24
 It follows that the Nevada group raised the representation issue in connection with the motion for summary judgment and thus is entitled to argue it on appeal. Cf. C. Wright, A. Miller & M. Kane, 10 Federal Practice and Procedure Sec. 2716, at 650-51 (1983) (noting that the appellate court, on review of a grant or denial of a motion for summary judgment, may "consider only those papers that were before the trial court"). Therefore, we reverse the judgment of the district court and remand for further proceedings.
 
 
 25
 REVERSED AND REMANDED.
 
 KOZINSKI, Circuit Judge, dissenting:
 
 26
 I regret that I am unable to join the court's opinion. As I read the record in this case, plaintiffs have presented a wholly new theory on appeal, one not presented or argued to the district court in opposition to the motion for summary judgment. Because I believe that the district judge correctly resolved the issue presented to him, I would affirm.
 
 
 27
 The record in this case is concededly not clear. There are, as the court points out, some inconsistencies between witnesses, as well as in what the same witnesses have said at different times. However, we do not sit as a district court; we may not comb through the record anew looking for a conceivable basis on which the party who suffered summary judgment might have prevailed. Our mission is much more limited: to determine whether the district court erred in resolving the questions presented to it. While we review these issues de novo, our authority ends there. As the Seventh Circuit noted:
 
 
 28
 It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal.
 
 
 29
 Liberles v. County of Cook, 709 F.2d 1122, 1126 (7th Cir.1983) (emphasis added). See also Frank C. Bailey Enterprises, Inc. v. Cargill, Inc., 582 F.2d 333, 334 (5th Cir.1978); Edward B. Marks Music Corp. v. Continental Record Co., 222 F.2d 488, 492 (2d Cir.), cert. denied, 350 U.S. 861, 76 S.Ct. 101, 100 L.Ed. 764 (1955).
 
 
 30
 Nothing in the papers presented by plaintiffs to the district court, or in their argument on the motion for summary judgment, put defendants and the court on notice as to the legal and factual theories that they advance on this appeal and that the court adopts today. Plaintiffs' theory below was based entirely on Vernon Char's participation in a meeting with members of the Hawaii group, Morrison, and Bowman. The district judge carefully questioned plaintiffs' counsel on this point at oral argument and plaintiffs' counsel steadfastly adhered to this position:
 
 
 31
 THE COURT: All right. I noticed, you recall, that Mr. Char--pardon me--that Mr. Ventura said that the crux and the whole basis of your complaint here is that during--that--was the agreement itself, as drafted, which brought about the demise of the company and that the liability of Char for the damages resulting from the demise of the company arose out of the terms of the agreement. Now is that your understanding of your position?
 
 
 32
 MR. BRIDGMAN [plaintiffs' counsel]: That's correct, Your Honor.
 
 
 33
 THE COURT: So that am I wrong in feeling that if there is any liability it must stem from what Char did at the time that the agreement was hammered out.
 
 
 34
 MR. BRIDGMAN: Essentially that's correct, Your Honor, yes.
 
 
 35
 Tr. of Oral Argument at 21 (emphasis added). Again, a few pages later:
 
 
 36
 THE COURT: And you maintain that under those circumstances that that raises an issue of fact as to whether or not when Bowman and Morrison or Morrison/Bowman came to Char's office that they were looking for counsel to represent the Nevada group?
 
 
 37
 MR. BRIDGMAN: That's correct.
 
 
 38
 THE COURT: And that the proof of that fact is that you have the statement there that Bowman says that Char said that he was representing both sides, ...
 
 
 39
 MR. BRIDGMAN: Yes, Your Honor.
 
 
 40
 THE COURT: ...all parties.
 
 
 41
 MR. BRIDGMAN: Yes, Your Honor.
 
 
 42
 THE COURT: That's the factual context of your position?
 
 
 43
 MR. BRIDGMAN: That's correct, Your Honor.
 
 
 44
 Id. at 29-30. At oral argument before us, counsel for appellants admitted, with commendable candor, that her colleague had argued a different theory before the district court than she was arguing on appeal.
 
 
 45
 Faced with the issue as framed by plaintiffs in opposing summary judgment, the district court concluded that during the meeting in question the Nevada group was represented by Bowman, who negotiated with Char, the representative of the Hawaii group. The district court also determined that Char's promise that he would represent everybody's interests was made after the meeting was over and could have had no effect on what had gone on before. Since plaintiffs' counsel had based his case entirely on what happened during the meeting, see p. 754 supra, the district court ruled for defendant.
 
 
 46
 The court rejects appellees' contention that appellants have changed theories on appeal by noting that "Char's argument ignores pleadings and misquotes testimony." At 756. This is harsh and, in my view, unwarranted criticism of appellees and their attorney.[1] The citations to the record on which the court relies simply are not persuasive. For example, the court notes that Char's responsibility by virtue of his role in incorporating ASH was raised in the complaint and denied in the answer. At 756. I fail to see the relevance of this. We are reviewing a motion for summary judgment, not a motion to dismiss. If what is contained in pleadings could defeat a motion for summary judgment, there could never be summary judgment. The Federal Rules are clear: "[A]n adverse party may not rest upon the mere allegations or denials of his pleading, but his response ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).
 
 
 47
 The court next points to statements and evidence presented in support of defendants' motion for summary judgment. At 756. What defendants argued, and the evidence they presented, is not, however, germane to whether plaintiffs presented evidence and arguments that would have defeated summary judgment. I find it telling that the court is unable to cite a single passage from plaintiffs' memorandum in opposition to the motion for summary judgment or the materials presented in support thereof. In fact, the evidence presented by plaintiffs supports the district court's decision. Excerpts from Bowman's deposition, attached to plaintiffs' memorandum opposing summary judgment, clearly disclose that Char's alleged statement that he would represent all the parties was made only after the parties had finished hammering out the terms of the agreement. Clerk's Record 17, Ex. A. at 45.
 
 
 48
 The only portion of the record even remotely supporting the proposition that plaintiffs relied on Char's incorporation of ASH as basis for liability is the passage from the transcript of the summary judgment hearing, quoted by the court at page 757 of the opinion. That passage must, however, be read in context. It is nothing more than an off-hand remark by counsel, entirely unsupported by argument or evidence. Moreover, it was as off-handedly withdrawn as it was offered. Just a few lines later, plaintiffs' counsel agreed with the court that "if there is any liability it must stem from what Char did at the time that the agreement was hammered out." Tr. at 21. I find the earlier passage, on which the court relies, an insufficient basis for reversing the district court's considered grant of summary judgment.
 
 
 49
 I would not encourage litigants to sandbag their opponents and the district court in this fashion. I therefore respectfully dissent.
 
 
 
 [1]
 At the time of the lawsuit, the firm's name was Damon, Shigekane, Key & Char. See Appellants' Brief at 3
 
 
 [2]
 The Nevada group sued the Hawaii group in Morrison v. Goldberg, No. 80-00280, but that case was dismissed with prejudice on April 7, 1982. See Answering Brief of Defendants-Appellees at 6
 
 
 [3]
 When a district court adopts findings of fact that were "suggested" by the "successful attorney" in a summary judgment motion, those findings are not particularly useful upon review. Garter-Bare Co. v. Munsingwear, Inc., 650 F.2d 975, 980 (9th Cir.1980) (quoting Edward Valves, Inc. v. Cameron Iron Works, Inc., 289 F.2d 355 (5th Cir.), cert. denied, 368 U.S. 833, 82 S.Ct. 55, 7 L.Ed.2d 34 (1961)). Anderson v. City of Bessemer City, 470 U.S. 564, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985), reemphasizes the principle that findings of fact submitted by the prevailing party after a trial and adopted "verbatim" by the judge are reviewed under the "clearly erroneous" standard. But the situation here is different; these findings of fact were proposed to justify a motion for summary judgment, not to accompany a judgment after a full trial. As such, City of Bessemer City is inapposite
 
 
 [4]
 EEOC v. Maricopa County Community College Dist., 736 F.2d 510, 513 (9th Cir.1984), which applied the clearly erroneous standard of review to stipulated findings of fact submitted on cross-motions for summary judgment, is easily distinguishable from the instant case, in which the parties obviously do not agree about the facts involved
 
 
 [5]
 Some of the disputed issues center on conflicts in the testimony of witnesses for the plaintiffs. Obviously, the nonmoving party in a motion for summary judgment cannot forestall the granting of such a motion by creating its own dispute, without regard to the other side's position. See Radobenko v. Automated Equipment Corp., 520 F.2d 540, 544 (9th Cir.1975). Here, however, even if the issue of the number of Char/Nevada group meetings were not a genuine issue, so many other issues that are genuinely disputed remain that the plaintiffs here cannot be accused of blocking the motion for summary judgment by sleight-of-hand
 
 
 [6]
 This diversity action was brought in the federal District Court for the District of Hawaii; thus, Hawaii law should be applied. See Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4, 96 S.Ct. 167, 168, 46 L.Ed.2d 3 (1975) (per curiam)
 
 
 [1]
 While the court accuses Char of misquoting testimony, it gives no support for this very serious charge. Since the case is before us after the grant of summary judgment, there was no trial testimony; the court must therefore be referring to deposition testimony. However, I have been unable to find any instance where deposition testimony was misquoted