**KL GROUP, a California general partnership formerly known as Keoni Loa, Plaintiff-Appellant,**

v.

**CASE, KAY & LYNCH, a Hawaii general partnership, Paul A. Lynch, a Hawaii law corporation, Paul A. Lynch, an individual and Steven D. Whittaker, an individual, Defendants-Appellees.**

No. 86–2021.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 8, 1987.

Decided Oct. 9, 1987.

Robert B. Ericson, Los Angeles, Cal., for plaintiff-appellant.

Ronald E. Mallen and Michael L. Boli, San Francisco, Cal., for defendants-appellees.

Before GOODWIN, BEEZER and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

## I

### OVERVIEW

KL Group ("KL"), a California partnership, appeals the district court's grant of summary judgment in favor of the defendants-appellees, and the district court's protective order barring KL's use of a letter, for which the attorney-client privilege was claimed and which was inadvertently turned over to KL during discovery. We have jurisdiction under 28 U.S.C. § 1291. We affirm the grant of the protective order, but because genuine issues of material fact exist, we reverse the summary judgment and remand the case to the district court.

## II

### FACTS

KL was formed for the purpose of acquiring and developing twenty-two acres on Poipu Beach, Kauai, Hawaii. Legal title to the property was held by a trust. The trust agreement required a complex bidding procedure and acceptance by beneficiaries holding sixty percent of the trust interests before a purchase offer could be accepted. KL offered $5.9 million for the property in April 1979. Beneficiary voting to accept or reject the offer was set for May 15, 1979. A second bidder, Diamond West, made a competing offer of $6.9 million. KL countered with its own $6.9 million offer conditioned on acceptance before April 23, 1979. Beneficiaries holding eighty percent of the trust interests voted to accept KL's offer on April 23, 1979. On the advice of defendants Case, Kay & Lynch ("Case Kay"), a Hawaii law partnership, the trustee refused to sell the property to KL because KL's offer had been accepted prior to the May 15 designated balloting date.

Believing it had an enforceable contract, KL retained Hawaii attorney Robert A. Smith ("Smith") to assist it in compelling the trustee to complete the sale. KL (then known as "the Hunt Knight partnership") filed suit in the United States District Court for the District of Hawaii and in Hawaii state court against the trustee, the beneficiaries of the trust, and Diamond West and its broker.

In June of 1979, KL resubmitted its $6.9 million offer. Again, the offer was accepted, this time by beneficiaries holding seventy percent of the trust interests. Thereafter the transaction was closed with Lawyers Title Insurance Corporation of Virginia ("Lawyers Title") providing title insurance. The litigation which spawned the present lawsuit ensued. Diamond West, the unsuccessful bidder, and its real estate broker sued KL by filing counterclaims in KL's original lawsuit which KL had filed in the district court in Hawaii. The counterclaims included claims against KL for interference with business relationships, unfair competition, and fraud. The counterclaimants also sought rescission of the sale (which would have defeated KL's title) and imposition of a constructive trust.[1]

When the counterclaims were filed, KL's attorney, Smith, tendered defense of the counterclaims to Lawyers Title and demanded indemnification under the policy of title insurance Lawyers Title had furnished when KL bought the property. In response to this demand, Case Kay, who represented Lawyers Title, wrote to Smith by letter dated October 29, 1979 ("the October 29 letter"). In this letter, Case Kay, on behalf of Lawyers Title, took the position that the policy of title insurance did not provide coverage for the counterclaims because the counterclaims were founded upon "affirmative tortious conduct" not covered by the policy. Case Kay stated, however, that Lawyers Title would pay the cost of the defense of "the counterclaim," reserving the right to deny coverage and reserv-

---

1. Diamond West and its broker also filed a separate lawsuit against KL seeking rescission of the sale and imposition of a constructive trust. Another lawsuit was filed against KL by two of the beneficiaries of the trust who sought rescission of the sale and imposition of a constructive trust. These separate lawsuits, as well as the original lawsuit and the counterclaims, were consolidated in the district court in Hawaii and designated the "Poipu Litigation."

ing the right to raise any other defense to liability under the policy. The October 29 letter, written on Case Kay stationery, provided in its entirety:

October 29, 1979

Mr. Robert A. Smith
Davies Pacific Center
Suite 2208
841 Bishop Street
Honolulu, Hawaii 96813
Re: Policy No. J486839,
Lawyers Title Insurance Company
Insured: Keoni Loa

Dear Mr. Smith:

This letter will respond to yours of September 14, 1979 concerning the lawsuit commenced by your client, Hunt Knight partnership,[2] in the United States District Court, Civil No. 79–0178 on April 30, 1979. In an amended answer to that complaint filed August 2, 1979, Mr. Patrick Jaress, attorney for defendants Michael J. Ryan and Hawaii Real Estate Exchange, Ltd. set forth certain counterclaims against plaintiff including a claim for rescission and cancellation of the sale of the Poipu property. In addition to the right to rescind the contract between Long & Melone, Ltd. and Hunt Knight partnership, counterclaimants assert the right to imposition of a constructive trust on the subject property.

Among other things, these counterclaims are based on allegedly false and misleading statements of your clients and affirmative tortious interference with the business relationships of Hawaii Real Estate Exchange and Michael J. Ryan. While we have not yet received the further statement of facts in support of your tender of defense as promised in your letter, we feel it is appropriate to respond at this time.

It is the position of Lawyers Title Insurance Company that the insurance policy issued by it to Keoni Loa does not provide coverage against the claims asserted in the defendants' counterclaims.

Among other matters, and without waiving reliance on other exculpatory provisions of the policy, we have reference to the clear language of Exclusions from Coverage, paragraph 3. There is an Exclusion for:

Defects, liens, encumbrances, adverse claims, or other matters (a) created, suffered, assumed, or agreed to by the insured claimant; (b) not known to the Company and not shown by the public records but known to the insured claimant either at Date of Policy or at the date such claimant acquired an estate or interest insured by this policy and not disclosed in writing by the insured claimant to the Company prior to the date such insured claimant became an insured hereunder....

Since any successful counterclaim by the defendants would appear to arise from the affirmative tortious conduct of your clients, the lack of coverage seems plain.

However, even though there is no coverage under the policy, Lawyers Title Insurance Company is willing to defend against this counterclaim. The cost of this defense will be born [sic] by Lawyers Title Insurance Company; however, Lawyers Title Insurance Company will undertake to defend you only with the express understanding that any such action shall not be construed as a waiver of the rights of Lawyers Title Insurance Company under the policy and shall not be considered as an acceptance of liability or an admission of an obligation to defend under the policy. Lawyers Title Insurance Company will undertake the defense only upon the express condition that it reserves any rights which it may have to deny coverage or raise any other defense to liability under the policy; conversely you will retain any rights you may have under the policy.

By providing the defense, Lawyers Title Insurance Company does not, in any way, obligate itself to pay any judgments which may be rendered against you or

---

2. For purposes of this appeal, "Hunt Knight Partnership" and KL may be regarded as the same entity. Both were known as "Keoni Loa".

any settlement made on your behalf and the insurance company will not be obligated to furnish any appeal bond. Moreover, it is understood that you will cooperate with Lawyers Title Insurance Company in the defense of the case and will render all assistance in your power toward procuring a favorable decision.

In the circumstances of this case, since the claims against the title to your property arise by way of counterclaim, we must make it clear that we are assuming the defense of this counterclaim only. We will not assume any responsibility for prosecution of the principal action and, indeed, fully expect you to move forward with that prosecution in the mutual interest of the insured and insurer.

Please acknowledge your understanding and agreement to the foregoing by signing in the appropriate space below. Retain the enclosed copy for your records, and return the acknowledged letter to us in the stamped, addressed envelope provided. We understand your motions are pending before the Honorable Samuel P. King on November 13, 1979, so your prompt cooperation in this matter will be appreciated.

If you have any questions, please feel free to contact me.

Very truly yours,

CASE, KAY & LYNCH for LAWYERS TITLE INSURANCE COMPANY

/s/ Stephen D. Whittaker
STEPHEN D. WHITTAKER

ACKNOWLEDGED AND SO AGREED:

/s/ Robert A. Smith
ROBERT A. SMITH
DATED: 10–31–79

The foregoing letter was signed by attorney Stephen D. Whittaker on behalf of Case Kay. It was also signed by Smith under the typewritten statement: "ACKNOWLEDGED AND SO AGREED".[3]

As the Poipu litigation proceeded, both Smith and Case Kay performed legal services in connection with it. Smith's legal services were performed exclusively for KL, although KL contends that some of his services benefited Lawyers Title and should have been paid for by Lawyers Title. Case Kay's legal services were performed both for KL and for Lawyers Title. Smith and Case Kay agreed that Smith would prosecute KL's original complaint, and Case Kay would provide the "basic defense" of the counterclaim. In practice, however, this division of effort quickly blurred.

Smith wrote to Case Kay seeking its help in persuading Lawyers Title to pay Smith for services he rendered in the litigation. On advice of Case Kay, Lawyers Title paid the portion of Smith's fees which were incurred before Case Kay undertook defense of the case, but refused to pay any part of Smith's charges for services rendered thereafter. Smith contended that it was impossible to allocate clearly his discovery work between "offense" (the complaint) and "defense" (the counterclaim), and suggested that Lawyers Title pay half of his fees for these services. Case Kay acknowledged in a letter to Lawyers Title that "if Smith had not undertaken [the discovery work] this office would have had to. Thus, there is a good argument that he should be reimbursed a portion of those fees." But, Case Kay nonetheless recommended rejection of Smith's claim that Lawyers Title pay one-half the fees because Smith had agreed to remain active in the case and to prosecute the complaint vigorously, and because Case Kay found "it impossible to identify those portions of Mr. Smith's billings that should be reimbursed." At this time Case Kay was representing KL in defense of the counterclaim. To the extent Lawyers Title did not pay Smith's charges, KL had to pay them.

During the course of the litigation, KL decided to sell the property. At first Law-

3. In letters dated December 14, 1979 and January 10, 1980, Case Kay tendered offers to defend KL in the two separate lawsuits mentioned in footnote 1 which, together with KL's original suit and the counterclaims, comprised the Poipu litigation. These subsequent letters contain language nearly identical to that of the October 29 letter. We need only consider the October 29 letter to reach our decision.

yers Title refused to issue a policy of title insurance. KL then obtained new legal counsel and at the urging of this new counsel, Lawyers Title issued a policy of title insurance and the sale was concluded. In connection with the closing, claims of the counterclaimants in the Poipu litigation were transferred from the property to the sales' proceeds. In April 1981, Case Kay, on behalf of Lawyers Title, notified KL that because the sale had closed, title issues, and therefore Case Kay's defense responsibility, were terminated. KL disputed this position. It maintained that Case Kay was responsible for the defense of all the counterclaims.

On November 12, 1982, KL sued Case Kay in the United States District Court for the Central District of California for breach of fiduciary duty, misappropriation of confidential information, intentional interference with contractual relations, legal malpractice, and breach of an implied covenant of good faith and fair dealing. KL alleged that Case Kay had agreed, according to the terms of the October 29 letter, to represent KL in the defense of the counterclaims, and that Case Kay had failed to discharge its attorney's obligation to KL by (a) impermissibly advising Lawyers Title on coverage issues adverse to KL; (b) failing to adequately disclose its insurer/insured conflicts of interest; and (c) failing to adequately represent KL.[4]

On defendants' motion, the case was transferred pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the District of Hawaii. Case Kay then filed a motion for summary judgment. In support of this motion, Case Kay argued that the parties had contracted for Case Kay to represent KL only for the limited purpose of defending challenges to KL's title to the Poipu property. Case Kay alleged that it had been agreed that Smith was to act as KL's attorney throughout the litigation, while Case Kay was to act only as the attorney for Lawyers Title. The district court granted Case Kay's motion for summary judgment.

Prior to the summary judgment proceedings, the district court considered Lawyers Title's Motion for Protective Order re Inadvertently Disclosed Privileged Documents. Lawyers Title, a non-party in the litigation, argued that in response to a subpoena duces tecum from KL, it had inadvertently produced a letter, dated September 11, 1981, which was privileged correspondence between Lawyers Title and the law firm of Cades, Schutte, Fleming & Wright ("Cades Schutte"). Lawyers Title had retained Cades Schutte to defend it against the possibility of suit by KL. In September 1983, Long & Levit, who were then defense counsel for Case Kay in this case, as well as counsel to Lawyers Title, produced nearly 2,000 documents in compliance with KL's subpoena duces tecum. Among the documents produced was the September 11, 1981 letter from Cades Schutte to Lawyers Title. This letter discussed weaknesses in both Case Kay's and Lawyers Title's positions.

On July 10, 1984, the district court, by adoption of a magistrate's recommendation filed March 30, 1984, ordered that "the letter and the subject matter of its contents are inadmissible and it may not be used for any purpose by plaintiff in this or any other proceeding, and that the letter and all copies and written summaries thereof shall be returned forthwith to counsel for Lawyers Title."

### III

### STANDARD OF REVIEW

A grant of summary judgment is reviewed de novo. *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir.1986). We will affirm only if, viewing the evidence in the

---

4. KL acknowledges that Case Kay successfully defended KL's title to the property. The district court concluded, and it is not challenged on appeal, that "no one disputes the quality of the work done by Case Kay on behalf of Keoni Loa [KL] in defense of the title issues." In its decision the court quoted a September 29, 1980 letter from Smith to a KL partner in which Smith stated "Paul Lynch, his partner, Bruce Bigelow, their associate Steve Whittaker, and several other associates in the [Case Kay] office did absolutely sterling work in the three motions and supporting legal memoranda which they filed."

light most favorable to the non-moving party (KL), there are no genuine issues of material fact and the moving party (Case Kay) is entitled to judgment as a matter of law. *See Ashton v. Cory,* 780 F.2d 816, 818 (9th Cir.1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A party opposing summary judgment "may not rest upon the mere allegations or denials of [his] pleading, but [his] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Any findings of fact made by the district court as part of its summary judgment, and to which the parties have not stipulated, are subject to de novo review. *Morrison v. Char,* 797 F.2d 752, 755 and n. 4 (9th Cir.1986).

We review the district court's grant of a protective order relating to discovery for abuse of discretion. *Shad v. Dean Witter Reynolds, Inc.,* 799 F.2d 525, 527 (9th Cir. 1986); *Hatch v. Reliance Ins. Co.,* 758 F.2d 409, 416 (9th Cir.), *cert. denied,* 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 555 (1985).

## IV

## ANALYSIS

A. *Summary Judgment*

(1) *Applicable Law*

■ The district court relied almost entirely on California case law in granting summary judgment for Case Kay. The decision and order, however, are silent as to any choice of law analysis. The district court's jurisdiction was premised upon diversity. 28 U.S.C. § 1332(a)(1). In a diversity case, a federal court must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). This case was originally filed in the United States District Court for the Central District of California. It was transferred to the District of Hawaii on defendant Case Kay's motion pursuant to 28 U.S.C. § 1404(a). Change of venue is not accompanied by a change in the applicable state law. *Van Dusen v. Barrack,* 376 U.S. 612, 639, 84 S.Ct. 805, 820, 11 L.Ed.2d 945 (1964). California remains the forum state for a choice of law analysis. We therefore look to the choice of law rules of California to determine whether to apply California law or Hawaii law in our de novo review of the district court's grant of summary judgment.

■ California applies a "governmental interest" analysis in determining the applicable law. *Liew v. Official Receiver and Liquidator,* 685 F.2d 1192, 1195–96 (9th Cir.1982). Application of this analysis requires three steps.

(a) *Do the Laws of the Two States Differ?*

We first examine Hawaii and California substantive law to determine whether the laws in the two jurisdictions differ in their application to disputed issues in this litigation. *Id.* at 1197. The principal issue in dispute is the extent to which Case Kay represented KL and what duties it owed to KL as a result of that representation. These matters are addressed by the October 29 letter. If the letter unambiguously committed Case Kay only to defend KL's title, Case Kay did that and the district court did not err in granting summary judgment. If the letter is ambiguous in this regard, then we must decide whether genuine issues of material fact exist concering the nature and extent of Case Kay's representation of KL and whether Case Kay breached any obligations owed to KL.

California law and Hawaii law differ in how to resolve the question whether a contract is ambiguous. California requires the trial court to "provisionally consider" all credible evidence relevant to the intention of the parties (even if the terms of the contract are facially unambiguous) to determine whether an ambiguity exists. *Pacific Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.,* 69 Cal.2d 33, 37–

40, 69 Cal.Rptr. 561, 563–65, 442 P.2d 641, 643–45 (1968); *Southern Pacific Land Co. v. Westlake Farms, Inc.*, 188 Cal.App.3d 807, 815–16, 233 Cal.Rptr. 794, 799 (1987) (error for trial court to take what appears to be the plain meaning of document "within its four corners" and disregard extrinsic evidence regarding purpose, custom, and practical construction). By contrast, Hawaii looks only to the document to determine whether an ambiguity exists, and strictly applies the parole evidence rule. *MPM Hawaiian, Inc. v. World Square*, 4 Hawaii App. 341, 344–45, 666 P.2d 622, 625–26 (1983).

#### (b) *Do Both Jurisdictions Have an Interest in Having Their Laws Applied?*

When the laws of the two jurisdictions differ, as they do in this case, we next must determine whether both jurisdictions, California and Hawaii, have an interest in having their laws applied. If only one jurisdiction has such an interest, then no "true conflict" exists and we apply the law of that jurisdiction. *Liew*, 685 F.2d at 1196. In the present case, California has an interest in having its laws applied to protect the rights of its citizens (KL's partners). Hawaii has a similar interest in seeing that the rights of its citizens (Case Kay and the members of that law firm) are protected. Thus, there is a "true conflict," and we proceed to the third step required by *Liew*.

#### (c) *Which Jurisdiction Has the Greater Interest in Having Its Law Applied?*

Because there is a "true conflict," we must "determine which jurisdiction's interest would be more impaired if its policy were subordinated to the policy of the other. The conflict should be resolved by applying the law of the jurisdiction whose interest would be more impaired if its law were not applied." *Liew*, 685 F.2d at 1196.

KL was organized for the purpose of acquiring title to real property in Hawaii. It retained counsel in Hawaii to assist it in this acquisition. As disputes arose in connection with the Hawaii property, legal counsel in Hawaii were retained. The law-

suits which generated this present litigation were filed in Hawaii. This lawsuit was filed in California but transferred to Hawaii. The claims in this lawsuit, which include claims of legal malpractice, are brought against members of the Hawaii bar. The legal services which the defendant attorneys were to perform were to be performed in Hawaii. Hawaii's interest in having its laws applied to this litigation transcends any interest California might have, and Hawaii's interests would be more impaired if Hawaii law were not applied.

We therefore apply Hawaii law to determine whether the October 29 letter is ambiguous.

#### (2) *Application of Hawaii Law*

The district court found that KL, through its attorney, Smith, knowingly agreed that (1) representation by Case Kay would be limited to title issues only; (2) Case Kay would continue to counsel Lawyers Title on coverage issues (potentially adverse to KL); and (3) Smith would represent KL and Case Kay would represent Lawyers Title. We review these findings of fact de novo, because KL did not stipulate to them. *Morrison v. Char*, 797 F.2d 752, 755 and n. 4 (9th Cir.1986).

■ The principal evidence upon which the district court's findings are based is the October 29 letter. Hawaii law requires us to look solely to the "four corners" of this letter to determine whether it is unambiguous. Examining the letter according to this stricture, we conclude that the letter is ambiguous. The letter refers to "counterclaims ... based on allegedly false and misleading statements ... and affirmative tortious interference with ... business relationships...." The letter further states: "It is the position of Lawyers Title Insurance Company that the insurance policy issued by it to [KL] does not provide coverage against the claims asserted in the defendants' counterclaims." Further:

Since any successful counterclaim by the defendants would appear to arise from the affirmative tortious conduct of your clients, the lack of coverage seems plain.

However, even though there is no coverage under the policy, Lawyers Title Insurance Company is willing to defend against this counterclaim. The cost of this defense will be born [sic] by Lawyers Title Insurance Company....

It would appear from the foregoing statements that Lawyers Title was assuming the defense of all the counterclaims; and that it would pay the cost of defending against all of them, reserving "any rights which it [had] to deny coverage or raise any other defense to liability under the policy...." Moreover, the only responsibility which Smith apparently was to have, according to the letter, was "for prosecution of the principal action" and to cooperate with Lawyers Title in the defense of the case and to render all assistance in Smith's power toward procuring a favorable decision.

On the other hand, the letter may be read as committing Lawyers Title only to assume defense of the particular counterclaim which attacked KL's title, that Case Kay would be counsel for KL only for this limited purpose, and that neither Lawyers Title nor Case Kay owed any other obligation to KL. The letter first refers to "counterclaims" in the plural form and characterizes the gravamen of the counterclaims as KL's "allegedly false and misleading statements ... and affirmative tortious interference with ... business relationships." The letter then states that the title policy does not provide coverage against "the claims asserted in the defendants' counterclaims." The only obligation assumed by Lawyers Title, according to this reading of the letter, was "to defend against *this* counterclaim." (emphasis added). The letter continues: "[S]ince the claims against the title to your property arise by way of counterclaim ... we are assuming the defense of this counterclaim only." And finally: "[W]e must make it clear that we are assuming the defense of this counterclaim only."

It is impossible to determine looking only at the October 29 letter whether Case Kay was to defend just the counterclaim(s) affecting title, or all of the counterclaims.

Nor can it be ascertained from this letter what the division of responsibilities was to be between Smith and Case Kay. The only way to answer these questions is by resort to parole evidence. This evidence is conflicting. The parties dispute the nature and extent of Case Kay's representation of KL, whether Case Kay had a conflict of interest in representing both KL and Lawyers Title, and whether Case Kay made adequate disclosures of the possible effect of this dual representation. *See Morrison*, 797 F.2d at 756 (Hawaii Code of Professional Responsibility Rule 5–105, which deals with a lawyer representing multiple clients, "calls for exquisite factual determinations in its application").

■ Case Kay argues that even if the letter is ambiguous, Case Kay is still entitled to summary judgment because the evidence it presented in the district court shows that Smith consented to Case Kay's limited representation of KL and that Smith, acting for KL, released Case Kay from any representational responsibility to KL. This evidence includes Smith's letters to KL's partners and Smith's deposition testimony. KL, however, points to language in the same letters and in other documents which it argues support its contentions. Suffice it to say that enough evidence exists on both sides of these questions to establish the existence of genuine issues of material fact which must be resolved. Summary judgment was inappropriate in this case.

B. *The Protective Order*

■ The district court granted a protective order requiring KL to return to Lawyers Title all copies and written summaries of a September 11, 1981 letter and to refrain from using the letter in its suit against Case Kay. This letter was written by the Cades Schutte law firm to its client, Lawyers Title. The letter had been produced inadvertently, along with some 2,000 other documents during the course of discovery, by the law firm of Long & Levit, who represented Case Kay in this litigation and who also represented Lawyers Title. The district court found that Lawyers Title

had not waived the attorney-client privilege with regard to the letter, and that the Long & Levit law firm could not waive the privilege for Lawyers Title. The district court found meritless KL's contention that Lawyers Title had no expectation of confidentiality in communications with Long & Levit because of Long & Levit's dual representation of Lawyers Title and Case Kay. The district court reasoned that although it was "within the realm of possibility that Lawyers Title ha[d] no expectation of confidentiality as to its communications with Long & Levit as against its co-client, Case, Kay & Lynch," it did not follow that "Lawyers Title ha[d] no expectation of confidentiality as against KL." KL appeals this decision.[5]

The availability of the attorney-client privilege in a diversity case is governed by state law. Fed.R.Evid. 501.[6] Rule 501, however, does not tell us which state law the forum state should apply. Commentators have suggested several methods for resolving this choice of law issue: (1) Assume that the state "which supplies the rule of decision" is the state which also supplies the privilege law; (2) apply the privilege rules of the state in which the federal court sits; or (3) apply the conflict

of law doctrine of the state in which the federal court sits. *See* 23 C. Wright & K. Graham, Jr., *Federal Practice and Procedure* § 5435, at 865–69 (1980); 2 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 501[02], at 501–22 (1986).

We need not decide the question whether Hawaii or California law applies to the privilege issue in this case because the result is the same under the law of both states. In both states, the client is the holder of the attorney-client privilege. Rule 503 of the Hawaii Rules of Evidence provides that "[a] client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client...." Haw.Evid.Code § 503(b). Sections 953(a) and 954 of the California Evidence Code provide that the client, as the holder of the privilege, is entitled to refuse to disclose a confidential communication between the client and his lawyer.

Hawaii and California law concerning waiver are also equivalent. Under Hawaii law, the privilege is waived if "[a] person upon whom the rules confer a privilege

---

**5.** Case Kay challenges the timeliness of KL's appeal from the district court's issuance of the protective order. Case Kay contends that the protective order was final. Case Kay argues that the appeal from the protective order was untimely because KL's notice of appeal was not filed within thirty days of the order. Fed.R. App.P. 4(a), 26(b).

The general rule is that discovery orders are interlocutory and nonappealable under 28 U.S.C. § 1291. *City of Las Vegas v. Foley*, 747 F.2d 1294, 1297 (9th Cir.1984) (citing *Hartley Pen Co. v. United States Dist. Court*, 287 F.2d 324, 326–27 (9th Cir.1961)). None of the exceptions to this general rule of non-finality applies to the protective order issued in this case. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949) (order appealable because it is a final disposition of a claimed right which is not an ingredient of the cause of action and it does not require consideration with it); *Mayacamas Corp. v. Gulfstream Aerospace Corp.*, 806 F.2d 928, 930 (9th Cir.1986) ("The collateral order exception applies only where there is an 'asserted right the legal and practical value of which could be destroyed if it were not vindicated before trial.'"), *cert. granted* —— U.S. ——, 107 S.Ct. 2458, 97 L.Ed.2d 732 (1987).

To consider this protective order a final order "would be an unwarranted expansion of the collateral order doctrine." *Legal Aid Soc'y v. Dunlop*, 618 F.2d 48, 51 (9th Cir.1980) (per curiam). This court did not have jurisdiction to review the district court's action until final judgment on the merits. KL's notice of appeal was timely filed within thirty days of final judgment on the merits.

**6.** Rule 501 provides:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

against disclosure ... voluntarily discloses or consents to disclosure of any significant part of the privileged matter." Haw.Evid. Code § 511. Under California law, waiver occurs if "any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to such disclosure made by anyone." Cal. Evid.Code § 912.

The September 11, 1981 letter was a privileged communication between the Cades Schutte law firm and its client, Lawyers Title. The holder of the privilege was Lawyers Title. It did not disclose the communication to KL and it did not consent to its disclosure. The production of the letter during the course of discovery was inadvertent. We conclude that under either Hawaii or California law, Lawyers Title did not waive its attorney-client privilege by Long & Levit's production of the letter. *See, e.g., American Mutual Liability Ins. Co. v. Superior Court,* 38 Cal.App.3d 579, 113 Cal.Rptr. 561 (1974) (attorney-client privilege not waived by attorney's production of files in response to a subpoena duces tecum, because production not voluntary). The district court did not abuse its discretion in granting the protective order.

## V

### CONCLUSION

We affirm the district court's grant of the protective order. We reverse the district court's grant of summary judgment in favor of Case Kay and remand this case to the district court for further proceedings.

Reversed and remanded.