**EUREKA FINANCIAL CORPORATION, Plaintiff,**

v.

**The HARTFORD ACCIDENT AND IN-DEMNITY COMPANY, and the Armstrong Insurance Agency, Defendants.**

No. CIV–S–90–1296 DFL GGH.

United States District Court,
E.D. California.

March 27, 1991.

**180**

Edward Sangster, McKenna & Cuneo, San Francisco, Cal., for plaintiff.

Claudia Robinson, MacKenroth, Seley & Anwyl, Sacramento, Cal., for defendants.

## ORDER

GREGORY G. HOLLOWS, United States Magistrate Judge.

Previously pending on this court's law and motion calendar for March 14, 1991, was plaintiff's motion to compel further answers to interrogatories and production of documents from The Hartford Accident and Indemnity Company. The parties filed a timely stipulation pursuant to E.D.Cal.R. 251. Having now reviewed the pleadings and heard oral argument, the court hereby issues the following order.[1]

## BACKGROUND

On January 12, 1988, plaintiff Eureka Financial Corporation (Eureka) filed the underlying complaint for breach of contract and bad faith against defendant The Hartford Accident and Indemnity Company (Hartford). Eureka claims that Hartford as insurer refused to defend Eureka in two construction defect actions. On October 17, 1990, defendant removed this action to federal court based on diversity of citizenship.

Plaintiff Eureka is a former partner of and successor in interest to Libra Partners (Libra). Between 1978 and 1984, Libra developed a 141–unit condominium complex, known as the Indian Hills Condominiums in the Northstar–Tahoe area, in a series of seven "blocks". Libra hired a general contractor, Squaw–Winn, for all but the first and last blocks. Squaw–Winn purchased liability insurance from defendant Hartford for all operations in connection with the construction of twelve of the units that Squaw–Winn built.

According to Eureka, Hartford issued endorsements through its agent, The Armstrong Insurance Company (Armstrong), naming Libra as "additional insured".[2] Hartford asserts that the endorsements are too vague to be enforceable and that Armstrong lacked the authority to issue the endorsements.

In September, 1986, the Indian Hills Condominium Association (IHCA) filed an action for declaratory relief against Eureka and Libra, alleging that Libra had failed to repair damages caused by construction defects (Indian Hills I). Libra had earlier agreed to repair such damages and had posted a $300,000 letter of credit to assure performance. When Libra tendered the defense of Indian Hills I to Hartford, Hartford refused to defend Libra. Hartford claimed that it had no duty to defend Libra because Libra had voluntarily agreed to repair the damages and had failed to give Hartford notice before agreeing to these repairs. Hartford also claimed that various exclusions applied. Eureka claims that Libra had agreed to the repairs in order to mitigate its damages and that Hartford was not prejudiced by any lack of notice.[3]

On November 18, 1986, IHCA filed a separate action against Eureka, Libra and Squaw–Winn, seeking damages for the al-

---

**1.** This order will discuss the attorney-client and work product privilege issue. The remaining disputes are adjudicated in a separate order.

**2.** Plaintiff amended its complaint to include Armstrong as a defendant on December 26, 1990.

**3.** The result of Indian Hills I is somewhat unclear but it appears that Libra Partners settled

with IHCA. Pursuant to the stipulation, Hartford contends that Libra and IHCA entered into a settlement in 1984 which covers all damages within Hartford's policy. Additionally, Hartford claims that this declaratory relief action arose out of contract of settlement entered into by Libra without Hartford's consent or contribution.

leged construction defects (Indian Hills II). Again, Hartford refused to defend or indemnify Libra, but Hartford referred the matter to counsel to defend Squaw–Winn. Eureka contends that Hartford eventually paid IHCA $300,000 towards settlement of Indian Hills II on behalf of Squaw–Winn.[4] On March 9, 1990, Libra settled Indian Hills II by agreeing to pay IHCA $1,325,-000 and agreeing to a supplemental sliding scale settlement.

On February 15, 1991, the parties appeared for a status conference before the Honorable David F. Levi. According to Judge Levi's scheduling order, discovery is to be limited to the following four areas: (1) Armstrong's role as an agent of Hartford; (2) Hartford's duty to defend; (3) exclusions in the insurance contract; and (4) the validity of the endorsement by Armstrong. Dispositive motions as to these four areas are to be filed by May 3, 1991.

Plaintiff Eureka has now filed the instant motion seeking an order compelling defendant Hartford to provide further responses to interrogatories and document production requests. Additionally, plaintiff is seeking sanctions pursuant to Fed.R. Civ.P. 37(a)(4).

## DISCUSSION

The issue involved in this order typifies an important and recurring problem in civil discovery—the improper assertion of a claim of privilege. This discussion reviews the contested interrogatories and requests for production, the *requirement* when objecting to discovery based on privilege that the documents/conversations allegedly privileged be specifically identified, and finally, the waiver of the attorney-client or other privilege that may result from improper assertions of the privilege.

### A. *The Discovery At Issue*

Several interrogatories and requests for production were propounded by plaintiff which involve the assertion of privilege.

Interrogatory No. 4:

Identify each document that Hartford had in its possession as of November 9, 1987, which showed the date on which the damages claimed by the Indian Hills Condominium Association in Placer County Action No. 76062 were discovered by the Association.

Interrogatory No. 5:

Identify each document that Hartford had in its possession as of November 9, 1987, which showed the date on which the damages claimed by the Indian Hills Condominium Association in Placer County Action No. 76062 were discovered by Squaw–Winn.

Hartford's initial response to each interrogatory provides:

Defendant is in the process of producing its claims file in connection with the request for production of document directed to defendant on October 29, 1990. By December 3, 1990, those documents will be in plaintiff's possession. Defendant thus objects to this interrogatory on the ground that the information called for is equally available to plaintiff.

Hartford later further responded by providing a list of documents, dated between March 31, 1983 and August 28, 1985. Hartford also stated,

"After January 22, 1986, this matter was referred to defense counsel for Squaw–Winn and all further reports, and the identity and description of those reports, are privileged under the attorney-client and work-product doctrines."

Request No. 1:

The entire contents of each of your claim or claims files relating to Libra Partners, Squaw–Winn, or the Indian Hills Condominium Project, regardless of how such are denoted, prepared or maintained, including but not limited to, the file folder, file "jackets" and other recordkeeping files to which the contents are affixed or

---

**4.** In the joint stipulation, the parties also refer to an earlier action filed by Libra against Squaw–Winn. Apparently this action was filed prior to either Indian Hills I or Indian Hills II and was consolidated with the Indian Hills litigation. Hartford claims that any defense of Squaw–Winn was incidental to this earlier action.

within which they are otherwise contained.

Hartford's Response:

With the exception of matters protected under the attorney-client privilege and work-product doctrine, defendant will produce the claim file relating to Libra Partners. Defendant objects to production of any claim files regarding Squaw–Winn on the ground that those claim files are not relevant to the subject matter of this action.

Request No. 7 seeks in relevant part:

Each document relating to or otherwise describing the administration, handling or processing of Libra Partners' tender of defense in Placer County Superior Court Action Nos. 76062 or 80790, including, but not limited to: (a) All such memoranda, interoffice communications, correspondence or other writings prepared or received by you.... (d) Each document relating to or otherwise reflecting the contents of any conversation, discussion or interview relating to the policies or the claims by Indian Hills Condominium Association, Libra Partners, or both.

Hartford's Response (with respect to (a) and (d)):

With the exception of correspondence to or from counsel and interoffice communications, memoranda, and writings referencing or relating to the relationship with counsel, all such documents have been produced.

## B. *Specific Assertion of the Attorney–Client Privilege*

Eureka argues that identifying and describing documents without a disclosure of substance does not violate any privilege. Additionally, Eureka states that Hartford must identify all documents even if they are privileged in order to allow Eureka to test the validity of the privilege. Hartford

asserts, without authority, that under federal law, counsel is not required to specifically identify the documents or other evidence to which the privileges are claimed. Hartford claims that such a requirement would be burdensome due to the large volume of documents.

■■■ Whether a responding party states a general objection to an entire discovery document on the basis of privilege, or generally asserts a privilege objection within an individual discovery response, the resulting "blanket objection" is decidedly improper. This fact should no longer be "news" to a responding party. *Peat, Marwick, Mitchell & Co. v. West,* 748 F.2d 540, 541–42 (10th Cir.1984) (holding that a blanket, non-specific attorney-client and work product privilege objection was insufficient and effected a waiver of the privilege); *Davis v. Fendler,* 650 F.2d 1154, 1160 (9th Cir.1981) (blanket privilege objection is improper); *Kansas–Nebraska Natural Gas Co. v. Marathon Oil Co.,* 109 F.R.D. 12, 23–24 (D.Neb.1983) (blanket objection based on privilege waives the privilege); *In re Shopping Carts Antitrust Litigation,* 95 F.R.D. 299, 305 (S.D.N.Y.1982) (party asserting a privilege objection must specify the evidence to which the privilege applies).[5]

Perhaps the clearest language stating the impropriety of the non-specific privilege objection appears in the treatise known to every litigator in the federal courts:

It was held under the former language [of Rule 34] that a general objection that some of the documents sought constituted work product of an attorney was insufficient since it did not designate which of the requested documents it claimed to be part of the work product. [citing a case]. *This result is required by the language of Rule 34(b) as amended.* (emphasis added)

---

5. Because the instant action is a diversity action, the substance of the privileges asserted are governed by state law. *Liew v. Breen,* 640 F.2d 1046, 1049 (9th Cir.1981); *Perrignon v. Bergen Brunswick Corp.,* 77 F.R.D. 455, 458 (N.D.Cal.

1978). However, it hardly needs mentioning that the *procedure* for responding to discovery requests in federal court litigation, including the procedure for the proper assertion of a privilege, is governed by federal law.

Wright and Miller, *Federal Practice and Procedure* (West 1970), Rule 34, § 2213 at 641 n. 18.[6,7]

Indeed, the well settled case law on the subject of specific identification of privileged materials is about to be codified as part of Fed.R.Civ.P. 26(b)(5).[8] The proposed rule provides:

Claims of Privilege or Protection of Trial Preparation Materials. When information is withheld from discovery on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

The above settled case law and the proposed rule only make common sense when one considers the reason for the specific objection requirement. The purpose of the specific objection requirement is to provide the party seeking discovery with a basis for determining what documents the party asserting the privilege has withheld. Otherwise, how could this opposing party ever know whether the documents withheld under a blanket privilege objection were withheld correctly, incorrectly, or maliciously? Hartford would have the court believe that an opposing party must simply trust the good faith and diligence of the party asserting the privilege.[9]

Hartford's unsupported statement in its papers concerning the propriety of blanket privilege objections to the contrary of the above law is inexcusable. At the hearing in this matter, Hartford attempted to justify its blanket objection on the basis that it would be burdensome to specifically identify documents to which a privilege applied. Although it may be time-consuming to specifically assert the attorney-client or work product privilege in a document intensive litigation, the courts nevertheless clearly require such specific identification. Because privileges impede full and free discovery of the truth, the assertion of a privilege such as attorney-client is strictly construed. *Weil v. Investment/Indicators, Research & Management, Inc.*, 647 F.2d 18, 24 (9th Cir.1981); *see also, United States v. Plache*, 913 F.2d 1375, 1379 (9th Cir.1990); *United States v. Gray*, 876 F.2d 1411, 1415 (9th Cir.1989). If the privilege is worth protecting, a litigant must be prepared to expend some time to justify the assertion of the privilege.

C. *Waiver of Privilege By Improper Assertion*

As noted above, several courts hold that a non-specific objection is improper and by itself serves as a waiver of the privilege asserted. This court believes that an analysis of whether a waiver of important privileges has been effected should be analyzed under the inadvertent waiver standard on a case-by-case basis.[10] The modern

---

6. Some districts have even gone to the length of codifying this well known law into its local rules. *See,* N.D.Cal. Local Rule 230–5 stating that no generalized claims of privilege shall be made. This rule also sets forth procedures for the proper assertion of the privilege, e.g., production of privilege logs.

7. As the above cases illustrate, the manner of assertion of the privilege is not dependent on the nature of the privilege. Any privilege objection should be specific with respect to documents, conversations, or other evidence.

8. *Federal Civil Judicial Procedure and Rules* (West 1991 edition). The Judicial Conference of the United States submitted this proposed rule to the Supreme Court on November 19, 1990. The amendment, if approved by the Supreme Court, is to be transmitted to Congress no later than May 1, 1991 and will become

effective December 1, 1991, absent congressional action to the contrary.

9. All too often, the blanket privilege is asserted by counsel who have not carefully reviewed the pertinent documents for privilege. In an abundance of caution, counsel withhold documents that are not privileged, thus defeating the full and fair information disclosure that discovery requires.

10. The Notes of the Advisory Committee on Proposed Rules state with respect to proposed Rule 26(b)(5), "A party receiving a discovery request who claims a privilege or protection but fails to disclose the claim *is at risk of waiving the privilege ...*" *Federal Civil Judicial Procedure and Rules* p. 92 (West 1991 edition) [emphasis added]. This view is in concert with this court's belief that an improper privilege objec-

trend on waiver of the attorney-client privilege favors a case-by-case determination of waiver based on a consideration of all the circumstances. *See, e.g., Hartford Fire Ins. Co. v. Garvey,* 109 F.R.D. 323, 329 (N.D.Cal.1985); *Permian Corp. v. United States,* 665 F.2d 1214 (D.C.Cir.1981); *See, also, Davis v. Fendler,* 650 F.2d at 1160 (in assessing the validity of a claim of privilege, the court should consider the context in which such a claim is made). At times, the blanket objection will be made for slothful reasons; at other times, there may exist an arguable reason why a specific identification of the document to which a privilege applies cannot be made.

■ Under federal law, a waiver of the attorney-client privilege may be effected by implication. Therefore, even the inadvertent disclosure of a privileged communication does not prevent the occurrence of a waiver. *See, e.g., Weil,* 647 F.2d at 24. In considering all the circumstances that may justify a finding of inadvertent waiver, the *Hartford Fire Ins. Co.* court examined the following elements: (1) the reasonableness of the precautions to prevent inadvertent disclosure; (2) the time taken to rectify the error; (3) the scope of discovery; (4) the extent of the disclosure; and (5) the "overriding issue of fairness." *Hartford Fire Ins.,* 109 F.R.D. at 332, citing *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 104 F.R.D. 103, 105 (S.D.N.Y.1985).

■ Adapting these elements to the instant case, the court finds that all of the factors weigh in favor of finding that Hartford has waived the attorney-client and attorney work product privilege in the instant discovery dispute. First, Hartford has taken absolutely no precautions to properly assert the privilege. Hartford failed to research the requirements for as-serting the privilege in federal litigation even after plaintiff filed its motion to compel. Therefore, Hartford's conduct is highly unreasonable.

■ Second, Hartford has made no attempt to timely rectify its error at all. Although Hartford's initial blanket assertion of the privilege was improper, the court could have excused this conduct if Hartford had taken the time to correct its error *prior to the discovery hearing on the issue.* However, Hartford appeared at the hearing without any specific identification of the privileged documents. Moreover, Hartford cited no authority for its position; it simply claimed that federal law does not require the specific listing of each privileged document.[11]

Third, the scope of discovery has been narrowed by the court, in order to facilitate the filing of dispositive motions by May 3, 1991. The outcome of the motions may well hinge upon the documentation produced in discovery. It was important for the parties to have identified by this time all producible documents as well as those documents for which a valid privilege could be claimed. As noted above, while the specific identification of privileged documents may be time-consuming, it is the only way that the court can determine whether the privilege applies.

Fourth, the extent of Hartford's improper objection was quite broad, as Hartford asserted that all documents generated after January 22, 1986, are privileged. Thus, Hartford's improper objection has halted plaintiff's efforts to obtain discovery of anything generated after litigation began in the underlying lawsuits—a time period of nearly five years.

Finally, fairness dictates that the court find a waiver in the instant situation. Pur-

tion is not a *per se* waiver of the pertinent privilege, but rather the effect of the deficient objection should be analyzed on a case-by-case basis.

**11.** During the hearing, when it finally appeared that the court was seriously considering the possibility that Hartford had waived its attorney-client privilege, counsel for Hartford requested that she be allowed to produce a log of privileged documents. The court has rejected this request in that it would set a precedent for delaying discovery. That is, a party could make an improper objection, persist in that objection until the last moment at a discovery hearing, and then, after all this delay, finally do what the law requires. The law requiring a specification of objections is settled enough that a multi-stage discovery adjudication process should be unnecessary.

suant to Judge Levi's scheduling order, the parties must file dispositive motions on four specific areas by May 3, 1991. In order to allow both parties to prepare their motions, the instant discovery dispute must be quickly resolved. This is a close call and the court notes that in all probability no waiver would have been found if Hartford had properly asserted its privilege by specifically identifying the documents *at least* some time prior to the hearing. However, given the stringent time restraints affecting this discovery dispute, the court is compelled to find a waiver of the attorney-client and work product privileges.

In summarizing its analysis of the circumstances, the court notes that it has discretion in such matters. Courts generally consider the reasons for the failure to properly respond to discovery requests and reserve the harshest sanctions only for flagrant violations of discovery rules. *Boselli v. Southeastern Pennsylvania Transportation Authority*, 108 F.R.D. 723, 726 (E.D.Pa.1985). Here, Hartford failed to comply with a well settled requirement of specifically identifying the evidence to which a privilege applies. Moreover, in its papers filed with this court, counsel cited absolutely no authority to support its contention that "under federal law, it is not a requirement that counsel claiming privilege list each and every document ...". Thus, Hartford persisted in its stonewalling at the time of initial responses, at the time of the meet and confer discovery conference,

and at the hearing itself. Given the fact that a waiver may be effected by implication, the court finds that Hartford has waived the attorney-client and work product privileges as to all documents sought in the request for documents set forth above.[12]

With respect to identification of documents requested in the listed interrogatories herein, it should be clear at this point that if the courts require a specific identification of documents for a valid assertion of the privilege, Hartford's objection to even identifying documents based on the attorney-client or work product privilege is patently improper.

Therefore, the court grants Eureka's motion in connection with Interrogatory Numbers 4 and 5. The court directs Hartford to provide Eureka with full responses within 20 days of the date of this order. The court finds that Hartford has waived the attorney-client and attorney work product privileges for all documents responsive to Requests for Production 1, and 7. In producing documents as ordered by the separate discovery order discussing relevancy and other objections, no document may be withheld because Hartford believes it is privileged.

Because the court finds that Hartford has waived the attorney-client privilege, it is unnecessary to discuss the breadth of the privilege asserted by Hartford—all documents created after litigation has commenced are privileged.[13]

**12.** The court's finding regarding waiver is not inconsistent with a recent case from the Northern District of California, *Bud Antle, Inc. v. Grow–Tech Inc.*, 131 F.R.D. 179 (N.D.Cal.1990). In *Bud Antle, Inc.*, the court referenced N.D. Cal.R. 230–5 requiring a specific identification of documents assertedly protected by privilege, but the court did not find a waiver of the privilege from a party's generalized objection. The court offered no rationale for this holding. This court finds as well that an improperly stated objection *per se* does not waive the privilege. However, to the extent that the holding in *Bud Antle, Inc.* could be construed to indicate that an improper objection is *never* a grounds for finding a waiver, the case would be out of concert with the authority cited within the text, and this court declines to follow it.

Moreover, the instant case can be distinguished from *Bud Antle, Inc.* The *Bud Antle,*

*Inc.*, plaintiffs initially asserted a blanket claim of privilege. However, prior to the hearing on defendant's motion to compel, plaintiffs produced a privilege log which specifically identified the privileged documents. Therefore, plaintiffs provided the court with sufficient information to enable the court to ultimately evaluate the claim of privilege. In the instant case, Hartford has failed to provide the court with any basis for determining the privileged nature of the documents.

**13.** Suffice it to say here that the Ninth Circuit has set forth the essential elements for a valid assertion of the attorney-client privilege. *United States v. Plache*, 913 F.2d 1375, 1379 n. 1 (9th Cir.1990). The rule in California is essentially similar. Cal.Evid.Code § 951 *et seq.* There is no such rule to this court's knowledge to the effect that all documents created by a client

SANCTIONS

Fed.R.Civ.P. 37(a)(4) provides:

If the motion is granted, the court shall, after opportunity for hearing, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

■ In imposing sanctions under Rule 37, the court has great discretion and its decision is only reviewed for an abuse of that discretion. *In re Akros Installations, Inc.*, 834 F.2d 1526, 1531 (9th Cir.1987); *Reygo Pacific Corp. v. Johnston Pump Co.*, 680 F.2d 647, 649 (9th Cir.1982). As expressly provided by Rule 37(a)(4), the court *shall* require the moving or opposing party to pay reasonable expenses *unless* the motion or opposition is substantially justified. Substantial justification is found when reasonable people could disagree as to whether the requested discovery was required. *See In re Akros*, 834 F.2d at 1530; *Reygo*, 680 F.2d at 649. Finally, no bad faith is required; even negligent failures to allow reasonable discovery may establish cause for imposing sanctions under Rule 37. *Marquis v. Chrysler Corp.*, 577 F.2d 624 (9th Cir.1978).

■ In the instant situation, the court finds that Hartford had no substantial justification for its opposition to this motion on the grounds of the attorney-client or work product privileges. Hartford made a blanket claim of privilege which completely contravenes the well settled requirements for a valid assertion of privilege. Moreover, Hartford offered absolutely no authority for its position in its initial objections, in the joint stipulation or at the hearing.

In conclusion, the court directs counsel for Hartford to pay plaintiff, in care of counsel for plaintiff, the amount of $618.00

after litigation has commenced are automatical-

for the reasonable fees and costs incurred in obtaining this order. This figure is computed by awarding 50% of the amount requested by Eureka. The court finds that both parties were substantially justified in their positions in this discovery dispute that did not involve privilege assertions.

IT IS SO ORDERED.

ly protected by the attorney-client privilege.