**Daniel CUNNINGHAM, Plaintiff,**

**v.**

**CONNECTICUT MUTUAL LIFE IN-SURANCE; and Does 1 through 100, inclusive, Defendants.**

**And Related Counterclaim.**

**Civ. No. 93–0087–H(RBB).**

United States District Court, S.D. California.

March 14, 1994.

the limitations period, plaintiff's claims do not require resuscitation.

Gastone Bebi, San Diego, for plaintiff.

Scott W. Sonne and Pamela Ewers, of Luce, Forward, Hamilton & Scripps, San Diego, for defendants.

AMENDED MEMORANDUM OPINION DENYING PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER AND REQUEST TO RETURN AND SEAL DISCLOSED DOCUMENTS AND GRANTING DEFENDANT'S MOTION TO COMPEL DISCLOSURE OF ATTORNEY–CLIENT COMMUNICATIONS [1]

BROOKS, United States Magistrate Judge.

On January 28, 1994, a hearing was held on plaintiff Daniel Cunningham's motion for a protective order and request to return and seal disclosed documents and defendant Connecticut Mutual Life Insurance's motion to compel disclosure of attorney-client communications. Gastone Bebi, Esq., appeared on behalf of the plaintiff. Pamela S. Ewers, Esq., of Luce, Forward, Hamilton & Scripps, appeared on behalf of the defendant.

## BACKGROUND

This lawsuit involves the decision by defendant Connecticut Mutual Life Insurance ("Connecticut Mutual") to stop paying disability benefits to plaintiff Daniel Cunning-

ham. The defendant insurer claims that the plaintiff is not disabled.

On November 9, 1978, Connecticut Mutual issued a disability income insurance policy to Daniel Cunningham. The policy provided a monthly benefit of $3,500.00, if the plaintiff became totally disabled and unable to engage in his regular occupation. When he obtained this policy, plaintiff listed his occupation as the president of a labor union.

In June of 1985, plaintiff incurred a loss compensable under the policy and filed for disability benefits. Cunningham claimed that he was totally disabled and could not perform the duties of his regular occupation because of chest, back and leg pains and a heart disorder that made him unable to cope with stress. At the time, he was employed as a real estate developer and construction consultant. Defendant made payments on the disability policy from 1985 until August, 1992.

On December 11, 1992, Cunningham filed the state court complaint underlying this suit. The lawsuit alleges breaches of the implied covenant of good faith and fair dealing and of Cunningham's insurance contract with Connecticut Mutual. On January 19, 1993, defendant Connecticut Mutual removed this action to federal court based on diversity of citizenship. The defendant later filed a counterclaim for fraud, breach of the implied covenant of good faith and fair dealing, rescission and declaratory relief.

### The Friedman State Court Litigation

Over a year before this action was filed and in connection with a dispute unrelated to Connecticut Mutual, Cunningham, his wife and his daughter filed suit in state court against Russell Friedman, Joseph Lorintz, and the law firm of Lorintz and Friedman. (Complaint, attached as Ex. F to Def.'s Notice of Lodgment, filed Jan. 14, 1994 [hereinafter Def.'s Notice].) This action is entitled *Daniel Cunningham, et al. v. Russell Friedman, et al.*, San Diego Superior Court Case Number EC003610 (*"Friedman "*).

---

1. Today's amended memorandum opinion is being reissued for purposes of publication and shall be entered *nunc pro tunc.*

The Cunninghams are represented in the *Friedman* suit by attorney Gerald Solomon. The Cunninghams allege that in 1987 they sought legal advice from attorneys Friedman and Lorintz about owning and operating certain restaurants. According to the plaintiffs, Friedman and Lorintz advised the Cunninghams that any corporations or entities developed to own or operate these restaurants should be owned by Friedman and Lorintz. The Cunninghams further allege that Friedman and Lorintz were to take title in name alone, but the Cunninghams were the true owners. They also claim that Friedman and Lorintz used the Cunninghams to gain ownership and control of these businesses. The Cunninghams filed suit for fraud, deceit, malpractice, breach of oral contract, breach of the implied covenant of good faith and fair dealing, duress, conspiracy, conversion, intentional infliction of emotional distress, an accounting and for the imposition of a constructive trust. The *Friedman* case is still pending.

### The October 4, 1991, Letter to Cunningham's Counsel

In this federal action, on April 1, 1993, defendant Connecticut Mutual served plaintiff Cunningham with a request to produce all documents relating to plaintiff's disability claim, whether or not in plaintiff's possession. The plaintiff served his written response to the request on April 30, 1993, and agreed to produce nonprivileged responsive documents. Attached to Cunningham's response was a list of twenty (20) documents withheld from production. (Log of Docs. Withheld, accompanying Pl.'s Doc. Resp., attached as Ex. C to Def.'s Notice of Lodgment, filed Jan. 21, 1994 [hereinafter Def.'s First Supplemental Notice].) The log contains a brief description of each document and the bases for not disclosing each listed item.

On July 27, 1993, pursuant to rule 45 of the Federal Rules of Civil Procedure, Connecticut Mutual served a subpoena *duces tecum* on Gerald Solomon, plaintiff's attorney in the *Friedman* case. The subpoena requested nonprivileged documents related to this federal action.

Initially, Solomon claimed that he did not have any nonprivileged documents other than pleadings. (Solomon Dep., at 4, attached as Ex. A to Def.'s Notice, *supra*.) However, months later, on October 28, 1993, Solomon produced four boxes of documents. No claims of privilege were made by Solomon or Cunningham, and no documents were withheld. A four-page, handwritten letter dated October 4, 1991, from plaintiff Cunningham to Solomon ("Gerry"), was included among these documents. (Letter from Cunningham to Solomon of 10/4/91, attached as Ex. E to Def.'s Notice, *supra*.) Connecticut Mutual copied the letter and retained its copy.

The October 4, 1991, letter relates to Cunningham's suit against Friedman. In the letter, plaintiff discusses his participation in numerous restaurants in which he, his wife and his daughter had invested. Among other things, Cunningham stated that he "supervise[d] the entire buildout & construction of the [Scalini] restaurant" and that he "was on premises until completion." (*Id.* at 1.) Cunningham also wrote that he, his wife and his daughter ran the Portofino restaurant "full time on a day to day basis. We were there 7 days a week & did complete management, hiring, menu planning, (doing every job needed to be done)." (*Id.*) Plaintiff stated that he and his daughter "did the complete day to day business affairs" at the Spice Rack restaurant and that he and his daughter "did the complete renovation & operation day to day" at the Pastels restaurant. (*Id.* at 2.)

Plaintiff Cunningham was deposed in connection with this lawsuit. During his deposition, he denied participating in the actual construction of the Scalini restaurant. (Pl.'s Dep., at 699–700, attached as Ex. B to Def.'s Notice, *supra*.) He also denied working full time on a day-to-day basis, seven days a week, at the Portofino restaurant and managing it. (*Id.* at 700–01.) In addition, plaintiff denied running the day-to-day business of the Spice Rack restaurant. (*Id.* at 703.) Finally, he denied performing the complete renovation of and operating the Pastel restaurant on a day-to-day basis. (*Id.* at 703–05.)

On December 3, 1993, during the deposition of plaintiff Cunningham, the October 4,

1991, letter was introduced by defendant's counsel. Gastone Bebi, Cunningham's counsel in this litigation, objected to use of the letter and stated that it was protected from disclosure by the attorney-client privilege. (*Id.* at 698–706.) Attorney Bebi refused to permit Cunningham to answer questions about the letter's content. (*Id.*)

On January 14, 1994, Cunningham filed his motion for a protective order seeking the return of the attorney-client communication. Plaintiff argues that the letter should be returned and that defendant Connecticut Mutual should not be able to use evidence obtained as a result of the disclosure of the letter. Cunningham asserts that Solomon's disclosure was inadvertent and does not waive the attorney-client privilege.

On January 14, 1994, Connecticut Mutual filed its motion to compel the production of attorney-client communications between Cunningham and his attorney in the *Friedman* case, Gerald Solomon. Defendant argues that it is entitled to the October 4, 1991, letter and other attorney-client communications, because the privilege has been waived or does not apply because of the crime-fraud exception to the privilege. Additionally, defendant seeks sanctions for the costs of filing its motion and opposing plaintiff's motion.

### DISCUSSION

### I.

### CUNNINGHAM'S MOTION FOR A PROTECTIVE ORDER

■ Upon a showing of good cause, rule 26(c) of the Federal Rules of Civil Procedure authorizes the court to issue "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R.Civ.P. 26(c). In certain circumstances, a protective order is the appropriate remedy to cure the unauthorized disclosure of privileged communications. *See KL Group v. Case, Kay & Lynch,* 829 F.2d 909, 919 (9th Cir.1987).

In this case, Cunningham seeks a protective order to obtain the return of his October 4, 1991, letter to attorney Solomon, to prevent Connecticut Mutual from using information gained from the letter and to seal unspecified deposition testimony relating to the contents of the letter. Connecticut Mutual opposes this motion on three grounds: One, Cunningham waived the privilege because he improperly asserted the claimed privilege. Two, Solomon's production of the letter waived Cunningham's attorney-client privilege. Three, the letter is not privileged because it comes within the crime-fraud exception to the attorney-client privilege.

A. *The Failure to Identify the October 4, 1991, Letter*

■ Defendant Connecticut Mutual claims that Cunningham improperly asserted a claim of privilege because he failed to identify the October 4, 1991, letter on his privilege log. Defendant argues that the failure waives the attorney-client privilege.

■ On April 30, 1993, plaintiff responded to the defendant's rule 34 request for documents. Cunningham did not identify this four-page handwritten letter, for which a claim of privilege is now made, although he did produce a privilege log identifying twenty (20) other documents. A failure to properly assert a privilege, as a matter of federal procedure, can result in a waiver of the privilege. *See Eureka Fin. Corp. v. Hartford Accident & Indem. Co.,* 136 F.R.D. 179, 183–84 (E.D.Cal.1991). This is true although a waiver might not result under state law.

■ Rule 35(b)(2), of the Federal Rules of Civil Procedure, operates in an analogous manner. The rule provides that a party requesting and obtaining a report of examination or examiner's deposition testimony waives his or her physician-patient and similar privileges. State law is superseded by federal procedure. *See* 10 James W. Moore et al., *Moore's Federal Practice* § 501.05, at V–27 (2d ed. 1993). The same can occur here.

■ This approach is consistent with rule 501 of the Federal Rules of Evidence which states that "[e]xcept as otherwise required by ... rules prescribed by the Supreme Court," privileges are governed by principles of common law, as interpreted by the courts

of the United States. However, where the elements of a claim or defense are governed by state law, privileges are determined in accordance with state law.

In *Eureka*, the court found that the improper assertion of a privilege resulted in a waiver. It reached this conclusion by applying the factors considered in inadvertent disclosure cases. 136 F.R.D. at 184–85. This approach will be followed here. ·

■■■ Failure to specifically identify documents on a privilege log does not automatically waive the privilege for omitted documents. Courts distinguish between a "slothful" and "arguable" failure to properly assert a privilege. *Id.* at 183–84. The following factors, taken from *Hartford Fire Insurance Co. v. Garvey*, 109 F.R.D. 323, 332 (N.D.Cal. 1985), are applied to determine whether the failure to specifically identify a document or a claim of privilege was excusable inadvertence: (1) the precautions taken to properly assert the privilege, (2) the time taken to rectify the error, (3) the scope of discovery, (4) the extent of the objection or claim of privilege, and (5) overriding issues of fairness. *Eureka Fin. Corp. v. Hartford Accident & Indem. Co.*, 136 F.R.D. at 184.

In *Eureka*, the factors weighed in favor of a waiver of the attorney-client privilege. *Id.* Hartford took no precautions to properly assert the privilege. *Id.* Hartford made no effort to timely rectify its error. *Id.* The scope of discovery had been narrowed by the court. *Id.* Hartford's improper objection was overbroad. *Id.* Finally, time constraints weighed in favor of finding waiver as an overriding issue of fairness. *Id.* at 184–85.

In this case, Cunningham took some minimal precautions to properly assert the privilege in connection with his production of documents. Cunningham objected to the production of some documents and produced a privilege log. (Log of Docs. Withheld, accompanying Pl.'s Doc. Resp., attached as Ex. C to Def.'s First Supplemental Notice.) However, he neglected to identify the October 4, 1991, letter, which presumably was in the custody of Solomon. Cunningham also neglected to review documents Solomon pro-

duced. This factor buttresses the conclusion that a waiver occurred.

Second, the time taken to rectify the error does not support a finding of waiver. In *Eureka*, even by the time of the discovery hearing, Hartford had made no attempt to rectify its errors. Here, Cunningham's attorney discovered the disclosure of the October 4, 1991, letter when it was brought to his attention during Cunningham's deposition on December 3, 1993. He objected to use of the letter and questions about its contents. Cunningham's attorney wrote to counsel for Connecticut Mutual regarding applicability of the attorney-client privilege on December 24, 1993. (*See* Letter from Ewers to Bebi of 1/6/94, attached as Ex. I to Def.'s Notice, *supra*.) Counsel conferred by phone on January 5, 1994. (*Id.*) After the parties were unable to resolve this dispute, Cunningham brought this motion for a protective order.

Third, like *Eureka*, the scope of discovery weighs toward a waiver. The document request was fairly narrow; it asked for documents relating to plaintiff's ability to work. The four-page, handwritten letter was among four boxes of documents produced by Solomon.

Fourth, the specific objection to disclosure weighs against finding a waiver. Unlike the broad objection stated in *Eureka*, Bebi's objection at the deposition was specific and prompt.

Finally, like *Eureka*, the fairness factor weighs heavily toward waiver. The letter should have been identified or included with the documents produced by· Cunningham. Stringent time constraints now affect this discovery dispute. The discovery cutoff date in this case was December 22, 1993. If plaintiff properly asserted his privilege by specifically identifying the letter before the discovery cutoff, the prejudice to defendant could have been minimized. This factor tips the balance in favor of a waiver of the attorney-client privilege. In addition, the confidential contents of the letter have been revealed to Connecticut Mutual. This case is unlike others where the document inadvertently disclosed was retrieved or not copied. *See Mendenhall v. Barber–Greene Co.*, 531 F.Supp. 951, 952 n. 2 (N.D.Ill.1982). These

factors, by themselves, are sufficient to support a finding of waiver. Moreover, as discussed more fully below, the contents of the letter reasonably relate to Connecticut Mutual's claim of fraud and is further support for a waiver.

### B. *Solomon's Production Under Rule 45*

Although Connecticut Mutual served a rule 34 document request on Cunningham, it obtained the October 4, 1991, letter from Solomon in response to a rule 45 subpoena. Cunningham asserts that Solomon, plaintiff's attorney in the *Friedman* litigation, was not authorized to produce the letter and did so inadvertently. Because defendant obtained the letter from Solomon, waiver through inadvertent disclosure is addressed under rule 45 of the Federal Rules of Civil Procedure.

■ A subpoena *duces tecum* may be served on a party to the lawsuit or a third person. Rule 45 outlines the duties of a party or a third person responding to a subpoena and making a claim of privilege. The rule, in part, states:

> When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

Fed.R.Civ.P. 45(d)(2).

■ As a matter of federal civil procedure, the failure of a responding *party* to comply with rule 45(d)(2) and disclose a claim of privilege may result in a waiver of the privilege. Fed.R.Civ.P. 45(d) advisory committee's note to 1991 amendment. A party's waiver under rule 45(d)(2) is analogous to a waiver under rule 35(b)(2) and is consistent with rule 501 of the Federal Rules of Evidence. *See* discussion *supra* part I.A.

■ On the other hand, when a *person,* not a party to the lawsuit, fails to comply with rule 45(d)(2), the considerations differ. The noncomplying witness may be held in contempt. Fed.R.Civ.P. 45(d) advisory committee's note to 1991 amendment. In this case, attorney Solomon did not withhold documents; he produced the October 4, 1991, attorney-client communication.

■ If a party's failure to disclose a claim of privilege and comply with rule 45(d)(2) can result in a waiver as a matter of federal procedure, a party's inadvertent disclosure of privileged documents should be treated the same. Both should be resolved as a matter of federal procedure. The same considerations apply to a claim that a third person inadvertently disclosed documents subject to a party's claim of privilege. There is no satisfactory basis for distinguishing between the two.

■ Rule 501 of the Federal Rules of Evidence does not require a contrary result. The provision calls for the application of state law "with respect to an element of a claim or defense as to which State law supplies the rule of decision." The rule does not preclude the application of federal common law to a procedural default or inadvertent production.

Although there is authority for resolving this issue under California law, this court will also consider the question under federal common law.

#### 1. *California Law*

■ Courts generally use three approaches to resolve whether inadvertent disclosure constitutes a waiver: (1) an evaluation is made of all the circumstances surrounding the disclosure, (2) the client is held strictly responsible for any disclosure, and (3) the client's subjective intent to disclose is controlling. California appears to follow the subjective approach to waiver by a privilege holder.

■ The California Supreme Court has not addressed whether the attorney-client privilege can be waived by a third person's inadvertent production of privileged documents. If state law is unclear, the federal court is required to determine how state law will be construed if the question were before the state's highest court. 1A Pt. 2 James W. Moore et al., *Moore's Federal Practice* ¶ 0.308[2], at 3088 n. 13 (2d ed. 1993).

In *KL Group v. Case, Kay & Lynch*, 829 F.2d at 918, the Ninth Circuit considered whether a third person custodian could waive the attorney-client privilege through the inadvertent production of a privileged communication. *KL Group* was a diversity case, so the Ninth Circuit applied California law.

In *KL Group*, the KL Group partnership filed suit in connection with a property dispute. Counterclaims were filed, and KL Group tendered the defense of the counterclaims to Lawyers Title, the title insurer on the property. *Id.* at 911. When the underlying property was sold, Lawyers Title refused to pay for the continued defense of the counterclaims. *Id.* KL Group subsequently sued its attorneys, Case, Kay & Lynch, concerning the scope of the obligation to defend the counterclaims. *Id.* at 914. Lawyers Title moved the court for the return of a letter it inadvertently disclosed in response to a subpoena *duces tecum* from KL Group. *Id.* This correspondence was between Lawyers Title and other attorneys, Cades, Schutte, Fleming & Wright, and it concerned weaknesses in both Case, Kay & Lynch's and in Lawyers Title's positions. *Id.*

 Relying on *American Mutual Liability Insurance Co. v. Superior Court*, 38 Cal.App.3d 579, 113 Cal.Rptr. 561 (1974), *KL Group* applied the subjective approach to the waiver of the attorney-client privilege.[2] Under the subjective approach, the client must affirmatively waive the privilege. An attorney cannot waive the attorney-client privilege for the client through inadvertent disclosure. *KL Group*, 829 F.2d at 919. The letter was inadvertently disclosed by its counsel, not by Lawyers Title. Because Lawyers Title did not consent to the disclosure, Lawyers Title did not waive the attorney-client privilege under California law. *Id.*

 In this case, plaintiff Cunningham is the holder of the privilege. The October 4, 1991, letter was inadvertently disclosed by Solomon, not by Cunningham. Cunningham did not consent to the disclosure. He did not waive the attorney-client privilege. There-fore, under California law, the letter remains privileged.

### 2. *Federal Common Law*

 If Solomon's disclosure of the October 4, 1991, letter raises a question of federal procedure, this court must determine whether the disclosure produces any different result under federal law. Federal common law on the subject is unclear.

 In *In re von Bulow*, 828 F.2d 94, 100 (2d Cir.1987), the court held that, under federal common law, the client is the holder of the attorney-client privilege, and only the client can waive the privilege. *Accord Klitzman, Klitzman and Gallagher v. Krut*, 744 F.2d 955, 960 (3d Cir.1984); *Kevlik v. Goldstein*, 724 F.2d 844, 850 (1st Cir.1984). To terminate the privilege, the attorney must have the client's consent. *See In re von Bulow*, 828 F.2d at 100; *Kevlik*, 724 F.2d at 850.

If the client inadvertently discloses attorney-client communications, many courts evaluate several factors to determine if a waiver of the attorney-client privilege should result. In *Hartford Fire Insurance Co. v. Garvey*, 109 F.R.D. 323, 332 (N.D.Cal.1985), the court used a five-factor test to resolve whether inadvertent disclosure by the client should result in waiver. The court, in *Chubb Integrated Systems Ltd. v. National Bank*, 103 F.R.D. 52, 67 (D.D.C.1984), held that although waiver can occur through inadvertence, there are unique circumstances which may be grounds to avoid a waiver, including whether the document production was "voluntary" and whether "confidentiality" has been lost. In *Transamerica Computer Co., Inc. v. International Business Machines Corp.*, 573 F.2d 646, 650–51 (9th Cir.1978), the Ninth Circuit held that a client's disclosure in a prior related action was compelled by accelerated discovery; it was not a "voluntary" production, so no waiver was found.

If a third person custodian inadvertently discloses attorney-client communications, courts articulate several approaches to re-

---

**2.** The holding in *American Mutual* is a narrow one. The court held that one joint holder waiving his attorney-client privilege could not waive the privilege of the other joint holder. *American Mutual*, 38 Cal.App.3d at 595, 113 Cal.Rptr. at 573.

solve whether the attorney-client privilege has been waived. In *Mendenhall v. Barber-Greene Co.,* 531 F.Supp. at 951, a patent attorney, not the trial counsel, left attorney-client communications in files the patent attorney produced for inspection. Opposing counsel reviewed the files and requested copies of four (4) attorney-client letters. The trial counsel refused to provide the copies and asserted the attorney-client privilege. The court stated the subjective test for waiver and held that no waiver occurs simply because an attorney inadvertently discloses attorney-client communications. *Id.* at 954–55. The court required more than negligence of counsel before the client would be deemed to have intentionally abandoned the attorney-client privilege. *Id.* at 955. Other courts agree. *See also Georgetown Manor, Inc. v. Ethan Allen, Inc.,* 753 F.Supp. 936, 938 (S.D.Fla.1991); *Kansas–Nebraska Natural Gas Co., Inc. v. Marathon Oil Co.,* 109 F.R.D. 12, 21 (D.Neb.1985).

An evaluation of the circumstances approach has appeared even in cases adopting other tests for resolving waiver. The court, in *In re Sealed Case,* 877 F.2d 976, 980 (D.C.Cir.1989), rejected the evaluation of the circumstances test in favor of a strict responsibility test, stating that it would not distinguish between various degrees of voluntariness in waivers of the attorney-client privilege. However, the court recognized an exception to this rule for court-compelled disclosures or extraordinary circumstances. *Id.* In *Helman v. Murray's Steaks, Inc.,* 728 F.Supp. 1099 (D.Del.1990), an attorney witness produced attorney-client communications that the client's trial counsel recovered. The *Helman* court cited *Mendenhall* with approval but applied some of the *Hartford* factors to determine whether the attorney was more than negligent. *Id.* at 1104.

The trend under federal common law appears to be toward an evaluation of circumstances. The *Hartford* factors for evaluating an inadvertent disclosure of privileged communications are discussed in part I.A, relating to Cunningham's failure to properly assert the attorney-client privilege. The production by Solomon, instead of by the client or a party, is one factor to be considered. As explained above, under federal common law, Cunningham has waived the privilege for his October 4, 1991, letter to Solomon. Although this court believes that federal common law should supplant state law, it need not resolve the conflict. A finding of waiver is still compelled as a result of Cunningham's improper assertion of the attorney-client privilege.

## C. *The Crime–Fraud Exception*

As a further ground for opposing Cunningham's request for a protective order, Connecticut Mutual claims that plaintiff has been involved in a fraudulent scheme that destroys the attorney-client privilege.

This issue differs from the procedural waivers discussed above and, in a diversity case, raises a question of state law. Section 956 of the California Evidence Code provides: "There is no privilege under this article if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit a crime or a fraud." Cal.Evid.Code § 956 (West 1966).

 In California, for the crime-fraud exception to apply, two elements must be shown. First, the party opposing the privilege must establish a *prima facie* case of fraud. *BP Alaska Exploration, Inc. v. Superior Court,* 199 Cal.App.3d 1240, 1262, 245 Cal.Rptr. 682, 696 (1988); *Nowell v. Superior Court,* 223 Cal.App.2d 652, 657, 36 Cal.Rptr. 21, 25 (1963). Second, the party must also establish a reasonable relationship between the fraud and the attorney-client communication. *BP Alaska,* 199 Cal.App.3d at 1268, 245 Cal.Rptr. at 701.

### 1. *Connecticut Mutual Has Made a Prima Facie Case of Fraud.*

 A *prima facie* showing of fraud consists of evidence from which reasonable inferences can be drawn to establish the fraud. *BP Alaska,* 199 Cal.App.3d at 1262, 245 Cal.Rptr. at 696–97. The elements of fraud necessary to establish the exception are: (1) a misrepresentation of material fact, (2) knowledge of the representation's falsity, (3) intent to deceive, and (4) the right to rely on the representation. *Id.* at 1263, 245 Cal. Rptr. at 697.

 The court in its discretion may conduct an *in camera* review of privileged communications to resolve whether they fall within the crime-fraud exception. However, only nonprivileged relevant evidence lawfully obtained is used to determine whether to conduct an *in camera* review. *See United States v. Zolin,* 491 U.S. 554, 574, 109 S.Ct. 2619, 2632, 105 L.Ed.2d 469 (1989). The party seeking disclosure must establish facts "to support a good faith belief by a reasonable person" that the exception applies. *Id.* at 572, 109 S.Ct. at 2631. The evidence does not have to be "independent" of the contested communication. *Id.* at 574, 109 S.Ct. at 2632. The same evidence used to determine whether to conduct an *in camera* review may also provide the basis for finding that the crime-fraud exception applies.

 Even assuming that the October 4, 1991, letter remains privileged, Connecticut Mutual has shown sufficient nonprivileged evidence, independent of the letter, to establish a *prima facie* case for finding that the letter is reasonably related to a future or ongoing fraud.

The plaintiff and his attorney, Gerald Solomon, made several representations to Connecticut Mutual regarding Cunningham's ability to work. On September 22, 1992, Gerald Solomon wrote to James Taylor, of Connecticut Mutual, and stated:

> You made several comments relating to allegations of Mr. Cunningham's alleged interest in such business entities as *Su–Dan Holdings, Portofino, Scalini's,* etc. You eluded to the fact that "public records" indicate that Mr. Cunningham is employed in such ventures. The is [*sic*] not true.
>
> ... *Mr. Cunningham has not [been] and continues not to be employed in any of these entities.*

(Ex. 6 to Solomon Dep., attached as Ex. A to Def.'s Notice, *supra* (emphasis added).) On October 5, 1992, Solomon again wrote to Taylor:

> In fact, the actions taken by Connecticut Mutual only add to Mr. Cunningham's disability. *His disability is* stress-related and now beyond his every day problems,

he has to worry about whether he is going to be collecting any disability benefits....

(Ex. 7 to Solomon Dep., attached as Ex. A to Def.'s Notice, *supra* (emphasis added).) On October 28, 1992, Connecticut Mutual interviewed Daniel Cunningham in the presence of his attorney, Gerald Solomon. During the interview, Solomon described a lawsuit involving his client by stating that "the statements made in the cross complaint [on behalf of Cunningham] are not true and that *Mr. Cunningham did not perform any of the physical tasks described in the cross complaint."* (Ex. 8 to Solomon Dep., attached as Ex. A to Def.'s Notice, *supra* (emphasis added).) In spite of these representations, Connecticut Mutual has offered contrary evidence.

#### a. *Plaintiff's Heart Condition*

Cunningham has claimed disability, in part, because of a heart disorder. According to Russell Friedman, Cunningham's former attorney and a defendant in the *Friedman* litigation, plaintiff told Friedman that Cunningham's heart condition was "a bullshit condition but that he was able to get full disability for it so it was a profitable situation." (Friedman Dep., at 9, attached as Ex. G to Def.'s Notice, *supra.*) Friedman also testified that plaintiff never complained of a heart condition or any condition that prevented him from doing something he wanted to do. (*Id.* at 9–10.)

#### b. *The Time Square Pizza Restaurant*

According to Friedman, plaintiff and his wife intended to set up the Time Square Pizza restaurant in 1986 and bring in people to operate the restaurant for them. (*Id.* at 23–24.) It was never plaintiff's nor his wife's intention to work there every day. (*Id.*) However, because the restaurant was not successful, the plaintiff and his wife worked at the restaurant daily. (*Id.* at 24.) Cunningham continually complained to Friedman of coming home exhausted each day from working at the restaurant. (*Id.*) However, on June 3, 1993, during his deposition, Cunningham denied being involved in the management or operation of the Time Square Pizza restaurant. (Pl.'s Dep., at 86–87, attached as Ex. B to Def.'s Notice, *supra.*)

#### c. The Portofino Restaurant

Friedman stated that the plaintiff "took the reins at Portofino's [restaurant] and literally ran the place on a day-to-day basis." (Friedman Dep., at 84, attached as Ex. G to Def.'s Notice, *supra*.) Plaintiff was "actually at Portofino's [restaurant] morning, noon and night every day of the week it was open." (*Id.* at 83.) Cunningham made all the decisions concerning the restaurant's operation and was always there. (*Id.* at 84–86.)

Plaintiff's daughter stated that plaintiff handled the business and did "basically everything but cook" at the Portofino restaurant. (Samantha Cunningham Dep., at 29–30, 43–44, attached as Ex. B to Def.'s Supplemental Notice, filed Jan. 25, 1994 [hereinafter Def.'s Second Supplemental Notice].)

#### d. The Spice Rack Restaurant

Friedman testified that Cunningham made all the major decisions in connection with the Spice Rack restaurant, including hiring and firing decisions and decisions regarding suppliers. (Friedman Dep., at 72–73, attached as Ex. G to Def.'s Second Supplemental Notice, *supra*.)

#### e. The Scalini Restaurant

During her deposition in the *Friedman* litigation, plaintiff's wife stated that Cunningham built the Scalini restaurant. (Susan Cunningham Dep., at 30, attached as Ex. A to Def.'s Second Supplemental Notice, *supra*.) Approximately seventeen (17) months later, while deposed in this case, she denied that plaintiff was physically involved in building the restaurant. (*Id.* at 51.)

According to Friedman, plaintiff was on the Scalini site most of each day during the construction of the Scalini restaurant, and after construction was completed, Cunningham was intimately "involved in even those mundane aspects [ordering food] of running the business." (Friedman Dep., at 40, 55–56, attached as Ex. G to Def.'s Notice, *supra*.)

#### f. The Sir Francis Drake Hotel Restaurant

Cunningham investigated the business potential, hired an architect and spearheaded negotiations for the San Francisco Sir Francis Drake Hotel restaurant. (*Id.* at 58–62.)

The plaintiff and Friedman both stated that these negotiations included trips to San Francisco. (*Id.* at 60; Pl.'s Dep., at 398, attached as Ex. B to Def.'s Notice, *supra*.)

From the independent evidence before the court, it reasonably can be inferred that plaintiff committed a fraud on the defendant. A *prima facie* case has been made that Cunningham misrepresented material facts. He and his attorney misrepresented Cunningham's involvement in several ventures. Plaintiff told defendant that due to a heart condition he was not able to cope with the stress of being a real estate developer and construction consultant. In addition, attorney Solomon made specific representations about Cunningham's employment and ability to work. Connecticut Mutual produced evidence showing that plaintiff actively participated in managing and operating these restaurants. A reasonable inference is that although he may not have been physically involved in building the restaurants, Cunningham was involved in the restaurants to such a degree that he was not disabled from his listed occupation as a real estate developer and construction consultant.

The defendant has also made a *prima facie* showing that Cunningham knew the representations were false. Plaintiff Cunningham claimed that due to his heart condition he could not work as a real estate developer and construction consultant. However, Friedman and Cunningham's daughter stated that Cunningham was extensively involved in the management and operation of multiple restaurants, often on a full-time basis. This is an adequate basis for finding that Cunningham was actively engaged in these business ventures and knew that his claim to the contrary was false.

Plaintiff's intent to deceive can be inferred from the circumstances. Plaintiff stated that his disability claim was "a profitable situation." While Cunningham claimed disability, he received $3,500.00 a month in disability benefits. He received disability payments from 1985 until August, 1992.

Finally, Connecticut Mutual had a right to rely on plaintiff's representations. As Cunningham's disability insurer, the defendant had a right to rely on its policy holder's

representations concerning his health and employability. It can be inferred that Cunningham sought to bolster his credibility with Connecticut Mutual by having attorney Solomon make similar misrepresentations about plaintiff's disability status. Defendant has established a *prima facie* case of fraud.

### 2. The October 4, 1991, Letter Is Reasonably Related to the Alleged Fraud.

■■■ Connecticut Mutual has shown sufficient evidence of a relationship between the October 4, 1991, communication and the fraud. The crime-fraud exception applies if the privileged material *reasonably relates* to the subject matter of the fraud. *BP Alaska,* 199 Cal.App.3d at 1268, 245 Cal.Rptr. at 701 (citing *In re Sealed Case,* 676 F.2d 793, 815 (D.C.Cir.1982)). The attorney does not have to be aware of the fraud if the communication furthered the fraud or if the client intended the communication to further the fraud. *People v. Clark,* 50 Cal.3d 583, 622, 789 P.2d 127, 153, 268 Cal.Rptr. 399, 425 (1990) (quoting *United States v. Friedman,* 445 F.2d 1076, 1086 (9th Cir.), *cert. denied sub nom. Jacobs v. United States,* 404 U.S. 958, 92 S.Ct. 326, 30 L.Ed.2d 275 (1971)).

■■ The crime-fraud exception requires disclosure of attorney-client communications made in October of 1991, even if the client used the attorney's services in September and October of 1992 to help perpetrate an on-going fraud on Connecticut Mutual.

The facts in *BP Alaska* are analogous to this case. There, privileged communications were made as part of BP Alaska Exploration, Inc.'s ("BP Alaska") investigation into a claim that another company, NWEC, was entitled to participate in BP Alaska's oil exploration contract with Tenneco. This investigation resulted in a fraudulent letter from BP Alaska to NWEC designed to convince NWEC that it had no right to participate in the Tenneco venture. The evidence permitted the trial court to infer a reasonable relationship between the subject matter of the fraud and the earlier privileged communication. *Id.* at 1269, 245 Cal.Rptr. at 701.

Like *BP Alaska,* it can reasonably be inferred that Cunningham sought his attorney's services to assist in the commission of a fraud by making misrepresentations designed to dissuade Connecticut Mutual from terminating disability payments. In *BP Alaska,* the lawyers' close involvement in the investigation also supported the reasonable inference that the counsel were aware of the facts giving rise to the fraud. *Id.* Similarly, although Solomon's close involvement could support an inference that he was aware of the facts giving rise to the fraud, this court need not make this determination to find that the crime-fraud exception applies.

In this case, there is sufficient evidence to find a reasonable relationship between the privileged 1991 communication and *both* the on-going fraudulent disability claim and the 1992 misrepresentations to Connecticut Mutual. The crime-fraud exception vitiates the attorney-client privilege for the October 4, 1991, letter.

### 3. The Attorney–Client Privilege Has Been Waived for Other Communications Reasonably Related to the Fraud.

■■■ The crime-fraud exception does not result in a wholesale waiver of the attorney-client privilege. *BP Alaska,* 199 Cal. App.3d at 1269, 245 Cal.Rptr. at 701. Documents are discoverable only if they are reasonably related to the fraud. *Id.* The *BP Alaska* court allowed the discovery of the following attorney-client communications: (1) a report by BP Alaska's outside counsel to assess NWEC's claims, (2) a memorandum by BP Alaska's vice president in charge of oil exploration prepared at the direction of general counsel, and (3) the testimony of BP Alaska's president in response to particular deposition questions. *Id.* at 1248, 1269, 1271, 245 Cal.Rptr. at 686, 701–02.

■■ Because the crime-fraud exception applies in this case, the attorney-client privilege does not shield from disclosure any documents reasonably related to the plaintiff's alleged fraudulent disability claim and fraudulent statements to Connecticut Mutual.

## II.

### CONNECTICUT MUTUAL'S MOTION TO COMPEL DISCOVERY

Defendant asserts that the October letter is not privileged, and, therefore, it is entitled

to other attorney-client communications between Cunningham and Solomon. As discussed in part I.A above, Cunningham waived his right to object to the production of the October 4, 1991, letter because he failed to properly assert the privilege and identify the document. Furthermore, the attorney-client privilege does not apply to the letter because it falls within the crime-fraud exception.

■ The scope of this waiver extends to communications reasonably related to the fraud. *BP Alaska,* 199 Cal.App.3d at 1269, 245 Cal.Rptr. at 701. Connecticut Mutual seeks to compel the disclosure of other attorney-client communications between Cunningham and Solomon. The privilege log produced by Cunningham identifies four (4) attorney-client communications:

| DESCRIPTION | BASES FOR WITHHOLDING |
| --- | --- |
| (1) Letter to Gerald Solomon from James A. Taylor, dated November 11, 1992. | Letter is produced, but there is redacted material that has been whited out; attorney-client privilege. |
| (2) Three-page memorandum from Daniel Cunningham to Gerald Solomon, date unknown. | Attorney-client privilege. |
| (3) One-page note to Gerald Solomon from Daniel Cunningham dated June 29. | Attorney-client privilege. |
| (4) One-page note reflecting message to Gerald Solomon from Daniel Cunningham, date unknown. | Attorney-client privilege. |

(Log of Docs. Withheld, attached as Ex. C to Def.'s First Supplemental Notice.) Connecticut Mutual maintains that it is entitled to production of these items.

Cunningham argues that counsel have not met and conferred on Connecticut Mutual's claim that Cunningham improperly asserted his claim of privilege. Under United States District Court for the Southern District of California Local Rule 26.1, the court will not entertain a motion "unless counsel have previously met and conferred concerning all disputed issues." Although the failure to timely assert the attorney-client privilege for the October 4, 1991, letter was not discussed by the parties before Connecticut Mutual

brought this motion, the crime-fraud exception, which is an independent basis for compelling discovery, was discussed. For this reason, Connecticut Mutual is entitled to compel the production of the four (4) identified documents. Furthermore, the parties did discuss their on-going discovery dispute with another magistrate judge and each other.

A determination of these related issues will promote a just, efficient and economical resolution of this dispute. In light of these circumstances, this court has considered Connecticut Mutual's alternate ground for opposing Cunningham's motion for a protective order and seeking to compel additional discovery.

Connecticut Mutual's motion to compel is granted. This court will conduct an *in camera* review of the four (4) privileged items to determine whether they reasonably relate to the claimed fraud and should be produced.

### III.

### *SANCTIONS*

Defendant seeks sanctions pursuant to rule 37(a)(4) of the Federal Rules of Civil Procedure for the costs of preparing its motion and its opposition to plaintiff's motion. Under rule 37(a)(4), the court may award a party the reasonable expenses incurred in preparing its motion or opposing a motion unless the motion was substantially justified or other circumstances make an award of expenses unjust. The court finds that plaintiff was substantially justified in bringing his motion. Therefore, defendant's motion for an award of expenses is denied.

### *CONCLUSION*

Plaintiff's motion for a protective order is denied. Cunningham's improper objection waives the attorney-client privilege. Furthermore, due to the application of the crime-fraud exception, there is no attorney-client privilege between Solomon and plaintiff for communications relating to the fraud on Connecticut Mutual. Defendant need not return the October 4, 1991, letter. Cunningham cannot claim the attorney-client privilege for

any documents that reasonably relate to plaintiff's fraud.

Defendant's motion to compel is granted. The plaintiff is ordered to produce the four (4) communications between attorney Solomon and the plaintiff identified on plaintiff's privilege log to this court by February 28, 1994, for an *in camera* review. If the court finds that the communications are reasonably related to the fraud on the defendant, Cunningham will be ordered to produce them to Connecticut Mutual. Defendant's request for sanctions or other relief is denied.